## Folsom. *versus* Cook & Co.

1. While it is the duty of the court to construe a lease, it is not error, where it is a question of fact whether an unexecuted paper has been accepted by the parties, and it has thus been made their lease, to submit that question to the jury, directing a special verdict in which the construction of the lease, if it be so found by the jury, is reserved as a question of law.

2. It is the duty of the court to interpret a contract, and of the jury to determine whether it is established by proof.

3. The depositing a letter properly addressed, with the postage prepaid in the post office, is *prima facie* evidence that the person to whom it was addressed received it.

February 9th, 1887. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON and CLARK, JJ., absent.

ERROR to the Court of Common Pleas of *Delaware county*: Of January Term 1887, No. 92.

This was a feigned issue under the following order of the court:

And now to wit, May 5th, 1884, the court, upon due consideration, directs that a feigned issue be framed in the above case, upon a wager in the usual form, in which the said Joseph M. Cook and W. W. L. Cook, trading as J. M. Cook & Co., shall be plaintiffs, and the said Benjamin F. Folsom shall be defendant, to determine whether the centrifugals, pans, tools, machinery, fixtures and all other goods and chattels, and property of any and every kind and description, to prevent the

[Folsom *v.* Cook.]

removal of which the above writ of estrepement issued, belonged
to the said J. M. Cook & Co., or Charles R. Cook, or whether
the said J. M. Cook & Co., or Charles R. Cook, at the time of
the issuing of the said writ, could lawfully remove the goods
and chattels aforesaid from the premises, demised to them by
the said Benjamin F. Folsom.

The facts of the case as they appeared on the trial were as
follows:

In the month of February, 1881, Benjamin F. Folsom, the
defendant below, was the owner of a sugar house in the city
of Chester. The house was.fitted up with machinery, piping,
vessels, etc., adapted to the manufacture of sugar from corn-
meal. William L. Cook, one of the plaintiffs below, applied
to Mr. Folsom at that time for a lease of the sugar house,
saying that he wanted it for the purpose of manufacturing
sugar from starch; that they expected they would not go into
the business very largely, but that they would want the whole
house, and that the business would be somewhat experimental.
Mr. Folsom proposed to rent them the house, with certain
wharf privileges and some appurtenant ground, for an annual
rental of $4,000. To this Mr. Cook objected, and upon stat-
ing that they expected to manufacture about two hundred
barrels per week, Mr. Folsom proposed to lease the house for
$3,000 per annum, with a proportionately increased rent, reg-
ulated by the excess of product over two hundred barrels per
week.

On the 29th of March, 1881, W. Marr who adapted the mill
to manufacture sugar under his process made the following
written memorandum of what he testifies was the verbal lease
between the parties.

Statement of William Marr.   Dated March 29th, 1881.
Memr.   The following are the terms and conditions upon
which Mr. Folsom agreed to rent the Chester refinery:      .

The rent was to commence on the first day of March, 1881,
and to be paid monthly, and the tenancy was to be for one
year from the first day of March, 1881.   The rent was to be
three thousand dollars for the year, and upon the basis that
the quantity of goods to be manufactured would be two hun-
dred barrels per week, and for any excess in quantity over and
above two hundred barrels per week for any one month, a
proportionate increase of rent was to be paid for said month.
That the tenant was to have the use of the whole of the sugar
house building with the boilers, machinery, pumps, fixtures,
materials, in fact all there was about the place relating to a
sugar house or glucose factory, with the right to rearrange any
portion or articles to suit his business with the proviso that
any removals that might be made should be reinstated if de-

sired by the landlord. The tenant was also to have the use of the ground around the buildings with the use in common of the landing wharf; but not the use of covered inclosed sheds used for bonded stores. As a ground for the foregoing terms and conditions, representations were made by the agent of the landlord and confirmed by the landlord that at the time of the former parties ceasing operations the boilers, machinery and other appliances were in good working order, and that proper care had been taken of them, and they were then in good working order, and required only cleaning up and a small outlay, amounting to about three hundred dollars, to set the whole again in operation.

After some efforts on the part of Mr. Folsom to have Mr. W. L. Cook join him in having a written lease prepared, Mr. W. L. Cook came to his office shortly before the 26th of April and proposed to Mr. Folsom to make the annual rental $4,000 instead of $3,000, leaving out any *pro rata* increase, and that on account of the great expense incurred and to be incurred in the adaption of the house for their purpose, the rent should commence on May 1st, instead of March 1st. This proposition was accepted by Mr. Folsom, and on the 27th of April Mr. Folsom had the following written lease prepared.

Lease B. F. Folsom to J. M. Cook & Co.:

This article in writing witnesseth that Benjamin F. Folsom, of the city of Philadelphia and state of Pennsylvania, hereby leases and demises to Joseph M. Cook and W. W. L. Cook, trading as Joseph M. Cook & Co., of the city of Baltimore, and state of Maryland, all that certain sugar house in the city of Chester, and state of Pennsylvania, on the Delaware river at the east end of Market street, with the engines, pumps, boilers, tanks, machinery and fixtures therein, and the privilege of so much ground immediately around and adjacent to the said sugar house as may be necessary for the reception and storage of the coal used in the business to be conducted by the said lessees in the said business, and for a passage way for carts, wagons, horses and drays; also the privilege of allowing vessels to come to and lie at the wharf immediately in front of the said sugar house for the delivery and receipt of goods and merchandise which they may use or manufacture in their business, for the term of fourteen (14) months from the first day of March, A. D. 1881, at the annual rent of four thousand (4000) dollars, payable quarterly, for one year, and the remainder at the end of said term. Out of the first quarter's rent the said lessees shall be allowed to retain the sum of six hundred and sixty-six dollars and sixty-seven cents ($666.67) in consideration of the repairs, additions, alterations and improvements they have made or may make to the said

[Folsom *v.* Cook.]

building and machinery, and these repairs, additions, altera-
tions and improvements shall remain at the expiration of this
lease as the property of the said lessor, but should the said
lessor give to the said lessees ten (10) days notice before the
termination of this lease of his desire to have the machinery,
fixtures, pipes, etc., restored to the position they occupied at
the beginning of this lease, then the said lessees shall make
such restoration at their own proper cost and expense; at any
event, however, whether restored to their position or not, all
these additions, repairs and improvements shall be the prop-
erty of the lessor without any liability on his part to account
to the lessees therefor.    The said lessees on their part agree to
pay the said rent in the manner aforesaid and in every partic-
ular carry out and perform their part of this agreement.    And
they promise and agree that they will not conduct in or upon
the said demised premises any business other than the manu-
facture and sale of sugars and syrups, and that at the end of
their term will yield up and surrender all the said demised
premises with the machinery, fixtures and all the appurte-
nances as aforesaid in good condition and running order, and
that they will pay all bills for repairs and for such water and
gas as they may use, so that at the end of this lease the said
demised premises shall not be burdened or incumbered by any
act or omission of them, the said lessees.

In witness whereof the said parties hereto have hereunto set
their hands this       day of       A. D. 1881.

This was delivered to W. L. Cook on the same day, by Mr.
Folsom, at the Girard House in Philadelphia for the purpose
of having it executed by Cook & Co.    Cook testified that he
did not read the paper at that time, that before he read it he
sent the following letter:

BALTIMORE, May 7th, 1881.

Mr. B. F. FOLSOM, Phila.:—*Dear Sir :* My arrangement
when I last saw you was for me to see my brother on my re-
turn to Balto. Saturday as he was to come up Monday, and
send it back with him.    He took a notion to come Saturday
instead, and we passed each other on the road, and I have
been intending to come over each day since, but the 1st of the
week was too busy, and latter part been very unwell.    I intend
coming over Tuesday or Wednesday next, and if you can
meet me at Chester then, telegraph me to that effect, if not,
then please wire me when you can.    However there is now
no issue between us, and when rent is due you can get check
for amt.                Very respectfully,

W. W. L. COOK.

That after he read the lease he wrote to Mr. Folsom and

[Folsom v. Cook & Co.]

properly addressed the letter to Mr. Folsom and mailed it to him, in which he stated he declined to execute the lease.

This letter Mr. Folsom testified he never received.

Cook & Co. paid the rent for two quarters maturing August 1st and November 1st, at the rate of $4,000 per year.

Cook & Co., the tenants, in the latter part of December commenced to remove the additions to the machinery which they had put in, when they were stopped by a writ of estrepement issued by the landlord, and an issue was framed in this case to try the right of the parties to the property which the tenants claimed the right to remove.

In the general charge the court instructed the jury, *inter alia*, as follows:

If, however, from all the evidence you come to the conclusion that they did not agree, but that their agreement was that all the repairs and additions and improvements to the old machinery only should be and remain the property of the landlord, if you find that that is all the plaintiffs agreed to, then they have the right to remove the new machinery, and in that event your verdict should be for the tenants, the plaintiffs. (First assignment of error.)

\*       \*       \*       \*       \*       \*       \*       \*       \*

One of the tenants says that after he read the lease over the second time, giving the reason for not signing the lease that there was something ambiguous in it, and that did not convey the meaning he had intended; he thought he did write a letter to that effect. Now whether the letter was received or not, if he wrote it and mailed it, it is evidence in the case; it does not bind the landlord, but it is evidence to relieve the tenant of the presumption that would otherwise arise, that he assented to the lease as it was written out. Therefore, whether that letter was received or not, if he mailed it, it is evidence, and proper evidence for the jury, even though defendant never received such letter. (Second assignment of error.)

\*       \*       \*       \*       \*       \*       \*       \*       \*

Now, this letter of May 7th, you will notice, is a very important piece of testimony, because it seems to intimate that the parties left and had some further talk; it winds up with the expression, or at least with the intimation, that it was not material whether the lease was signed or not, as he says all matters at issue are now settled. . Listen again: "My arrangements were, when I last saw you, for me to see my brother on my return to Baltimore, Saturday, as he was to come up Monday, and send it back with him; he took a notion to come up Saturday, instead, and we passed on the road." You will remember that this is in answer to a letter from Mr. Folsom, wanting to know why the lease had not been signed and re-

turned. And again: "I have been intending to come over every day since;" he had nothing to do but sign the lease and send it back. "But the first of the week I was too busy, and the latter part I have been too unwell; I intend coming either on Tuesday or Wednesday next; if you can meet me telegraph to that effect, and if not, please wire me when you can." I do not remember any evidence that he was telegraphed to, and I do not remember that the parties met; then comes the closing clause: "However, there is now no issue between us, and when the rent comes due you can get a check for the whole amount." What did he mean? That he had read over the lease and found that it was all right, or that he did not want to sign the lease until he saw Mr. Folsom; or that there was really no issue between them now, as it had been settled before, in the trouble over the extra expense he had undergone. (Third assignment of error.)

\*        \*        \*        \*        \*        \*        \*        \*        \*

If you find that the lease does not express what the parties meant, but that it contains something that the parties did not agree to, then you will say whether this paper (Marr's statement) is a correct memorandum of their contract. This is, therefore, a very important paper for the tenants; it is almost as strong testimony for their side of the case as the lease is for the side of the landlord. (Fourth assignment of error.)

The defendant presented, *inter alia,* the following points:

If the jury believe that the written lease is the terms upon which the property was demised, the verdict should be for the landlord.

Answer.—This point I will answer after I have received your special verdict. (Fifth assignment of error.)

The court directed the jury to find a special verdict as follows:

1st. If the jury find that the tenants accepted the blank lease as the contract between the parties, they may leave the construction of the said paper to the court. In which event you will say that you are ignorant in point of law on which side you ought, upon this fact, to find the issue; that if the court shall construe the paper as giving the landlord the right to remove new machinery then you find for the defendant. If the court should construe the paper to give the tenant the right to remove *new* machinery, put in by them, then we find for the plaintiff, and annex a list of the property which we find was new and could be lawfully removed.

2d. If the jury find that the blank lease was not accepted by the tenants, say whether the memorandum made by Mr. Marr is a correct statement of the contract. If it is, your

[Folsom *v.* Cook].

verdict should be for the tenants (plaintiffs), and annex a list of new machinery.

3d. If you find that neither paper contains the agreement, then under all the evidence do you find for the plaintiffs (the tenants, or the landlord (the defendant). If you find for the tenants, annex a list of the property you find they could remove.

What I mean by new machinery is machinery no matter if it be one hundred years old, if it were not in the mill before the tenants entered into possession, and to all the machinery that was put in there by them; and by the old machinery, everything that was there in the mill, even if it be new in every part but a crank, indeed if it be new in every part but it supplies the part of an old machine or is put in the place of one.

The jury found in favor of the plaintiffs, J. M. Cook & Co., with the right to remove the following property : One pump, five centrifugals, two small converters, three neutralizing tubs, two sunken tubs, one converter, three neutralizing tubs, one refuse tub, one frame building, one wooden tub, fifty iron tanks, nine wooden tubs, one mill, three tubs, one mixing tub, one grinding machine, one water filter.

Judgment was entered on the verdict, whereupon the defendant took the writ and filed the assignment of error as shown above.

*W. B. Broomall* (*R. C. McMurtrie* with him), for plaintiffs in error.—Where a party calls upon the court to construe a written contract in evidence, it is incumbent on the court to do so, and not submit it to the jury for construction : Reaney *v.* Culbertson, 9 Harris, 507.

The lease in this case was direct evidence of the relations of the parties to each other concerning the matter in controversy, and all direct evidence in writing is to be interpreted by the judge and not by the jury: Miller *v.* Fichthorn, 7 Casey, 252.

The question whether the tenants were bound to leave on the demised premises the additions to the machinery and building which they put thereon, is deducible from the writing in evidence, and wherever a material fact is thus deducible from a paper in evidence, it is the duty of the court to construe it: Heath *v.* Page, 12 Wright, 130.

Particular terms used by parties in writing are to be interpreted by the court: Gass' Appeal, 23 P. F. S., 39.

The construction of a written instrument is exclusively the province of the court: Bryant and Enwer *v.* Hagerty, 6

Norris, 256; Nellis *v.* Coldman, 2 Out., 465; Pegg *v.* Rist, 15 W. N. C., 70.

It makes no difference that the writing is not directly the matter in controversy. All the written evidence in a case must be construed by the court: Foster *v.* Berg & Co., 14 W. N. C., 215.

A suitor cannot give evidence of the contents of a letter mailed to his opponent without first having given him notice to produce it: Elbert *v.* Finkbeiner, 18 P. F. S., 243.

If it be answered that Mr. Folsom denied on trial the receipt of such a letter, then clearly it is evidence of nothing. How can a tenant, after giving his acceptance of a lease, and after receiving the advantage of it, by the abatement of two months rent under it, and paying the rent at the times prescribed in the writing, be permitted to introduce evidence of an uncommunicated objection to it, entertained after the acceptance of it?

There is no presumption of law that a letter mailed to one at the place he usually receives his letters was received by him: Bank *v.* McManigle, 19 P. F. S., 156.

*Richard P. White* (*George H. Earle, Jr.,* and *O. B. Dickinson* with him), for defendants in error.—It is the duty of the court to interpret a contract, and of the jury to determine whether it is established by proof: Stokes *v.* Burrell, 3 Grant, 241.

The finding of the jury made the construction of the paper immaterial. Any error in this respect is no cause for reversal: Bunce *v.* Stamford, 27 Pa. St., 265.

Was it error in the court to say that the parol proof of the contents of the letter of the plaintiffs, properly mailed to the defendant, was evidence?

. It would be sufficient answer to these objections to say that as there is no exception to the admission of the evidence, it was not error in any view for the court to say it was evidence. This has been settled law ever since McCullough *v.* Wallace, 8 S. & R., 181, where the evidence having been admitted without objection the court below said explicitly that "it was evidence" and your court affirming, decide that, "If illegal evidence has been given without objection it is not error in the court to treat it as legal evidence:" Weckerly *v.* Geyer, 11 S. & R., 35; Powell *v.* Sedgwick, 5 Wharton, 336.

The rule as to notice to produce, is that it must be given to a party who is in possession of the paper, and its admitted purpose is to enable such party, so having the paper, to produce it at the trial; so that the very terms of the rule, were there no authorities, show that it cannot apply to a

[Folsom *v.* Cook.]

party who absolutely denies having ever had the paper, as, in such cases, the notice could serve no possible purpose. And this has been settled by authority in Pennsylvania, ever since Company *v.* Johnson, 7 W. & S., 317, and has been so held as late as Company *v.* Swartz, S. C. of Penna. E. D. January Term 1884, No. 149 (not yet reported). See also 1 Wharton's Evidence, § 161.

The depositing in the post-office of a letter properly addressed, with the postage prepaid, is *prima facie* evidence that the person to whom it was addressed received it. The fact that the defendants had no additional proof that the letters were actually received is immaterial. . . . . The defendants had no control over the letters, it was not in their power to produce them; the plaintiff had testified that she never received them; and clearly a notice to her to produce them would be attended with no result, and would be a mere idle ceremony which the law did not require of the defendants: Briggs *v.* Hervey, 130 Mass., 186.

Mr. Justice TRUNKEY delivered the opinion of the court March 21st, 1887.

After the parties had made an oral agreement the landlord prepared a writing and sent it to the tenants for their signatures. This writing referred to in the testimony as the lease, was not signed by the parties, and it is not evidence of their agreement unless it is established that they assented to its terms. The landlord claims that it sets forth the contract, but the tenants deny that they so agreed. It was submitted to the jury whether the "lease" expresses the contract, and if so they were instructed to find for the plaintiffs, and annex a list of the property which could be lawfully removed; subject to the opinion of the court whether the contract set out in said paper gave the landlord the right to remove new machinery.

The defendant's second point was reserved. Had the "lease" therein mentioned been signed by the parties, it would have been competent for the court to have reserved the question of construction. It was equally the right of the court to make the reservation when it was the province of the jury to determine whether the unsigned instrument set out the terms of the lease. Had the jury found that it did, then its construction would have been for the court. But the verdict put the alleged written lease out of the case, and the fifth assignment is not sustained.

As the cause was submitted, the jury found that the memorandum made by Marr was not a correct statement of the contract. That memorandum was made near the time of the

making of an oral agreement testified to by the witness called by defendant. It contains no note of obligation to leave new machinery on the premises. Though not established as evidencing the contract, the paper was important as affecting the testimony of the witness, Marr. The portion of the charge complained of in the fourth assignment is part of the instructions relative to the testimony of Marr, and we think it is not erroneous.

The plaintiff in error cites numerous authorities in support of the proposition, that the construction of a written contract is exclusively the province of the court, and when a party requests the court to construe a writing in evidence, it is the duty of the court to do so and not submit it to the jury for construction. That is denied by nobody. But when the making of such contract is in dispute it is in the province of the jury to say whether it is established.

The jury failed to find that the contract is set out in either the unsigned lease or memorandum, but they did find that the tenants were entitled to recover certain machinery which they had furnished for use in their business. They were instructed as to the right of the tenants to remove the fixtures furnished by them, in case there was no agreement that they should become the property of the landlord; and that if the tenants agreed that the new machinery put on the premises should belong to the landlord, the verdict should be for defendant. Of all that the court said upon this subject, there is no complaint, except the following sentence :

"If, however, from all the evidence, you come to the conclusion that they did not agree, but that their agreement was, that all the repairs and additions and improvements to the old machinery only, should be and remain the property of the landlord, if you find that that is all the plaintiffs agreed to, then they have the right to remove the new machinery, and in that case your verdict should be for the tenants, the plaintiffs."

That is taken from the body of the charge. The first clause obviously relates to an alleged agreement mentioned in the sentence immediately preceding. With the context, the sentence complained of is free of error. By itself, it might seem inconsistent, if not confusing, to say that if the parties did not agree, and did make an agreement; but, read in connection with what preceded, the meaning is plain. The first assignment of error is not well taken.

Without objection or exception one of the tenants testified that after he received the "lease" he sent a letter by mail to Folsom, properly addressed, "telling him that he surely did not mean that he should take all our machinery." It is not alleged that the court erred in admitting the testimony, but

it is contended that the instruction that, whether the landlord received the letter or not, the sending of it by the tenant was evidence to repel the presumption that would otherwise arise that he assented to the lease as written is error. The depositing a letter properly addressed with the postage prepaid in the post-office is *prima facie* evidence that the person to whom it was addressed received it. Evidence that a letter was so sent demanding payment of rent is competent to rebut the allegation that no demand had been made : Briggs *v.* Hervey, 130 Mass., 186. The second assignment cannot be sustained.

Nor is there error in the instructions set out in the third assignment. Cook's letter dated May 7th, 1881, " was an acceptance of the lease," if Folsom were not mistaken in his testimony. If Cook testified the truth, that letter was not intended as an acceptance, for the parties had not agreed on the terms as written in the " lease," and the clause stating that there was no issue between them, referred to the condition of the fixtures and the cost of their repairs. The references and meaning of the letter could only be determined by the aid of other testimony, and the whole was properly submitted.

Judgment affirmed.