Cutler *v.* Peck Lumber Manufacturing Company, Appellant.

Argued April 14, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

reargument refused June 30, 1944.

*Raymond T. Law,* of *Mackie, Murphy & Law,* for appellant.

*Leon M. Levy,* with him *Everett A. Rosser,* for appellee.

OPINION BY MR. JUSTICE LINN, May 25, 1944:

Defendant appeals from judgment on a verdict for personal injuries and complains that its motion for judgment n. o. v. was refused.

The circumstances are very unusual. Defendant maintains a lumber yard and mill on the Lackawanna River in the City of Scranton. Plaintiff's home is on the property of the defendant, by whom her father was employed as yardmaster. On May 22, 1942, extraordinary rains and the breaking of several dams caused an unprecedented flood which reached its height during that night; on Saturday, May 23rd, the water was still several feet above the ground; plaintiff testified they "had about two foot of water in the house." The water gradually subsided leaving in defendant's yard and mill a deposit of silt and mud which plaintiff described as "very slippery, as grease." The Director of Public Works of the City of Scranton, called by the plaintiff, testified that the deposit was of ". . . sediment, silt, sand, a combination of the elements. It was sort of dark; it was very sticky; and it was necessary for our men to use rubber boots or to use rubbers over their other shoes, in order to hold their feet." He said it was a "very slippery condition, and very dangerous."

The plaintiff was not employed by the defendant, but was accustomed to go from her home through the "back gate" into defendant's lumber yard to deliver messages to her father. On Saturday and Sunday workmen were cleaning up and removing the mud, etc. At about five o'clock on Sunday afternoon, plaintiff attempted to cross a muddy portion of the yard on a

"wobbly" plank on her way to tell her father he was wanted at the telephone in his home. She saw him go into the "back end of the mill," on a plank or board, seven to nine feet long and ten inches wide, which he had placed on the mud to facilitate entrance to the mill. A workman accompanying him walked into the mill through the mud. The plaintiff was asked to describe "that board and where it was located" and answered: "A. It was right at the entrance of the mill. There's a large concrete platform there; and it was entirely covered with filthy mud; and the mud was very deep around; and I stepped up on the board, took two steps; and the thing wobbled; and I went down in this." She was familiar with the nature of the material deposited because she testified she had "shoveled it off the front sidewalk." She said, "The mud was all over the whole yard. This here was covered in depth of anywhere— well, too deep to walk into it." The plank ". . . was set in the mud. The plank was just lying down over the mud," which, she said, averaged six to eight inches deep. She testified, "Well, I wouldn't say it [the plank] was dry and I wouldn't say it was wet." She said, "I couldn't have very well entered the mill without stepping on the plank unless I would have waded through the mud . . ." Referring to her testimony that she saw her father enter the mill, she testified, "Q. Now, when your father walked in over this plank, Miss Cutler, did he wobble or did the plank wobble? A. Yes; he wobbled; but Daddy is pretty clever on his feet. Q. So that he did wobble on the plank? A. Yes. It wobbled with him, but he just went on in."

Plaintiff's father testified that the place ". . . was in bad shape, being entirely flooded"; that "it was covered then with a slippery mud that you could hardly walk in it." They were ". . . cleaning up the best we could, getting stuff, hauling stuff around, and trying to straighten the place up and get stuff back to where

it belonged. . . . A lot of the stuff was floated over towards the river bed; and I was trying to get it back in its place where it belongs, and some into bundles and some into piles."

With respect to the plank he testified, "Well, I had some men working there that had high boots and some that didn't; and so I put a board down there or a plank, so they could walk in on it." He described the plank as eight to ten feet long and ten inches wide. Asked what the plank was placed on, he said, "Well, on this slop and silt and stuff that was there that washed in from the river, and what they throwed out, some they throwed out from the mill." Asked about the stability of the plank he said, "Well, it seemed to be all right. It didn't bother me a great deal. By that I mean it didn't wiggle too much or anything." Asked, "And did you notice anything about the plank when she was walking on it, Mr. Cutler? A. No, I didn't see anything out of the way. Q. And you saw her fall? A. Yes. Q. And she landed inside the mill? A. Yes." In cross-examination he was asked on what he placed the plank and he answered, "Laid it on that there, whatever mush that was there, silt, silt, mud. Q. About how much of that sediment and silt was under the plank? A. Oh, I think might have been about three or four inches." Asked whether the plank was placed on an angle, he said, No, it was "straight out." He repeated that when he walked on it, "It wiggled around a little . . ." He could not tell how often he walked over it but said, ". . . I might have went over it, a half dozen times; might have only have went over it once."

While engaged on this errand, plaintiff was a licensee as defined in section 330 of the Restatement, Torts: "A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission." Section 340 provides: "A possessor of land is not subject to liability

to his licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by any dangerous condition thereon, whether natural or artificial, if they know of the condition and realize the risk involved therein."

The plaintiff, at the time of the accident, was about 35 years of age, and for many years had been familiar with defendant's yard. She was thoroughly familiar with the temporary or emergency conditions created by the flood because she assisted in cleaning up on Saturday and Sunday. On both days she saw the men cleaning up the lumber yard and saw conditions changing from time to time. Her father testified that the mud deposited on the floor of the mill was thrown out on the platform by the door into which the plank extended. She saw the plank wobble under her father's steps as he entered.

There is no dispute about the facts. There is no evidence to support a finding that, in the circumstances, the defendant failed to perform any duty owing by it to plaintiff. It was therefore the duty of the court to say that she was familiar with the condition of the premises and realized the risk of attempting to go over them and accordingly assumed the attendant risk: *Jones v. Counties Gas & Elec. Co.,* 289 Pa. 128, 137 A. 168; compare *Myers v. Edison Elec. Illum. Co.,* 225 Pa. 387, 389, 74 A. 223; *Blair v. B. & O. R. R. Co.,* 349 Pa. 436, this day decided; *Walker v. B. & W. Corp.,* 320 Pa. 504, 506, 182 A. 643; *DiMarco v. Penna. R. R.,* 321 Pa. 568, 572, 183 A. 780; *Onstott v. Allegheny Co.,* 338 Pa. 206, 210, 12 A. 2d 785.

The judgment is reversed and is here entered for the defendant.