### Sharp, Appellant, *v.* Luksa.

Argued April 22, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*David H. Moskowitz,* for appellant.

*Alfred Francis Shea,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, October 9, 1970:

On *March 8, 1966,* Joseph A. Sharp fell from a ladder located in the barn on property owned by defendant's decedent, Mary Luksa.* Sharp brought a trespass action for the personal injuries which he suffered, and

---

\* Mary Luksa died after the institution of this suit and Milton Thomas Luksa voluntarily substituted himself in her stead as Administrator of the Estate of Mary Luksa, Deceased.

at the close of his evidence, the lower Court granted a compulsory nonsuit. From the Order denying his motion to remove the judgment of nonsuit, plaintiff took this appeal. Cf. *Kukich v. Serbian E. Orth. Ch. of Pgh.*, 415 Pa. 28, 202 A. 2d 77; *Constitutional Party of Pa. v. Kilgore*, 427 Pa. 264, 233 A. 2d 223.

Mary Luksa owned a large piece of land on which were her house, a barn containing straight and box stalls for horses, and a fenced-in pasture land. In September 1965, plaintiff entered into an oral lease with Mrs. Luksa for the rental of a box stall, the use of a tack room and the pasture, all to be used in connection with his stabling of a horse in the barn. The rent was $15 per month.

A disagreement arose almost immediately between plaintiff and another tenant, Bob Foster, who boarded his horse at the barn, over plaintiff's use of the tack room to store his tack. Rather than arguing with plaintiff, Foster complained to Mrs. Luksa, who informed him that plaintiff had a right to use the tack room as part of their rental agreement. Plaintiff thereafter suggested that "rather than have hard feelings with other people," he would store his tack in the "loft" and Mrs. Luksa agreed. However, shortly thereafter Foster left, and plaintiff went back to using the tack room pursuant to his original lease agreement with Mrs. Luksa.

During the second or third week of *October 1965,* plaintiff requested permission to store a ton of hay *in the loft* because it would be beneficial to him to get a large quantity of hay at a reduced rate. Mrs. Luksa agreed to this request, but did not increase plaintiff's rent or charge anything extra for this privilege.* Mrs.

---

* Mrs. Luksa also gave this privilege to Ronald Winton, who was another tenant in the barn and with whom plaintiff shared the cost of the hay.

Luksa continued to use part of the loft for the storage of her lawn furniture.

The usual means of access to the loft was by the use of a 12-foot wooden ladder which led to a hole in the floor of the loft, approximately four feet by three feet. The hole was approximately eight feet from the floor of the barn and was covered over by a board, which, after climbing up the ladder, was slid back in order to gain entrance into the loft. The ladder was placed at about a forty-five degree angle from a wall, and rested on a smooth cement floor. The top of the ladder leaned against a beam running along the ceiling of the barn. The ladder was secured to the beam by baling twine and baling wire tied to the sides of the ladder and to nails driven into the beam. The baling twine and wire were used to prevent the ladder from slipping. There was testimony describing the condition of the ladder as being generally "shaky" and "wobbly." The area of the barn surrounding the ladder was dimly lighted. Plaintiff testified that he had used the ladder to get into the loft *at least forty or fifty times prior to the accident,* and had even used it the day before his accident.

On *March 8, 1966,* John Zunic, a foster son of Mrs. Luksa, who did general handiwork around the farm, was cleaning up the area around the barn. Plaintiff had a horse sleigh outside the barn which Zunic suggested they put in the loft. Plaintiff, Zunic and a third party carried the sleigh to the large barn doors in the front of the barn, through which they were going to take the sleigh to the loft. Zunic went to the house to get a wrench to loosen the nuts on the shafts of plaintiff's sleigh so that the sleigh could be semi-dismantled for storage in the loft, and plaintiff entered the stable area of the barn in order to climb to the loft and unlock the barn doors from inside the barn. He climbed

the ladder and, as he was sliding away the trap door, the ladder suddenly slipped away or fell from the wall, causing him to fall to the floor of the barn and sustain the injuries for which he brought this suit.

Plaintiff was a gratuitous licensee—the right given him to use the ladder and the loft, not being a part or provision of the lease, was solely for his accommodation, benefit and convenience, and not in any way for the benefit of the defendant. There was no proof of any latent or concealed defect or of any affirmative negligence, or of any dangerous condition known to defendant and unknown to plaintiff. See, *Matthews v. Spiegel*, 385 Pa. 203, 122 A. 2d 696; Restatement (Second) of Torts, §342. See also, *Davies v. McDowell National Bank*, 407 Pa. 209, 180 A. 2d 21; *Slobodzian v. Beighley*, 401 Pa. 520, 164 A. 2d 923; *Felix v. O'Brien*, 413 Pa. 613, 199 A. 2d 128.

Section 342 of the Restatement (Second) of Torts provides:

"§342. Dangerous Conditions Known to Possessor

"A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but *only if*, (a) *the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and** (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (c) *the licensees do not know or have reason to know of the condition and the risk involved.*"

The lower Court correctly held that plaintiff was familiar with the condition of the premises and realized whatever risk there was of climbing the ladder, and voluntarily assumed the risk. See, *Cutler v. Peck Lum-*

---

* Italics throughout, ours.

*ber Manufacturing Co.*, 350 Pa. 8, 12, 37 A. 2d 739; *Onstott v. Allegheny County*, 338 Pa. 206, 210, 12 A. 2d 785.

Order affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

There can be no quarrel with the majority's general statement of the law: If appellant was, as the majority contends, a mere gratuitous licensee with respect to his use of the loft, the decedent landlord owed him no duty to inspect the ladder leading to it. *Kopp v. R. S. Noonan, Inc.*, 385 Pa. 460, 123 A. 2d 429 (1956).

If, however, appellant's oral lease did include a portion of the loft, the landlord did owe such a duty. *Pratt v. Scott Enterprises, Inc.*, 421 Pa. 46, 218 A. 2d 795 (1966). Upon this record it was for the jury to have chosen between these two hypotheses concerning appellant's status, and for this reason I must dissent.

While the construction of a lease is ordinarily a question of law for the court alone, *Lott v. Guiden*, 205 Pa. Superior Ct. 519, 211 A. 2d 72 (1965), the resolution of questions as to the existence and terms of an ambiguous oral lease is within the province of the jury. *Folsom v. Cook & Co.*, 115 Pa. 539, 9 Atl. 93 (1887); *Leedom-Worall Co. v. Wick*, 55 Pa. Superior Ct. 243 (1913). The trial court is of course always free to withdraw a question of fact from the jury's consideration and decide it itself when the evidence so dictates, but withdrawal of the question of the terms of the contested oral lease was not warranted here.

As the majority recites, appellant entered into an oral lease with Mary Luksa in September of 1965 for the use of a stall, tack room and pasture for a monthly rental of $15. Later in the same month appellant received permission to store his tack in the loft in order to avoid an argument with another tenant concerning

use of the tack room. In October, after that other tenant had departed and the original reason for appellant's use of the loft had ceased, appellant requested and was granted the continued use of the loft for the purpose of storing hay. Another tenant was extended the same privilege. Finally, in March of the following year appellant was injured while attempting to climb the ladder to the loft.

The majority apparently reasons that the loft could not have been included in appellant's leasehold because unsupported by any consideration. In so holding, however, it overlooks long settled principles of property law. A parol lease which does not fix the term of the lease but which reserves rent at a specified rate per month will, without more, create a tenancy from month to month. *Hollis v. Burns,* 100 Pa. 206 (1882). Furthermore, the continuance of a tenant in possession into a new term is deemed a new and separate agreement requiring no additional consideration. *Supplee v. Timothy,* 124 Pa. 375, 16 Atl. 864 (1889). Thus, in September of 1965, during the *original* term of the lease, there was indeed no consideration for appellant's use of the loft. He was at that time but a licensee "privileged to enter or remain on land only by virtue of the posessor's consent." Restatement (Second) of Torts §330 (1965). However, it is possible, and the jury could have so found, that the continued permission to use the loft in the following months was intended by the parties as a renegotiation and expansion of the original lease. To be sure, Mary Luksa received no additional rental, but consideration could certainly be inferred from appellant's willingness to rent from her in the subsequent months leading up to and including the month in which the accident occurred.

Once it is accepted that the jury might reasonably have found the loft to be within appellant's lease, there

132

remains no other justification for the trial court's compulsory nonsuit. There was sufficient evidence that a reasonable inspection would have disclosed the dangerous condition of the ladder and that appellant did not voluntarily assume the risk of its use.

Appellant's case is far from overwhelming. Nevertheless, a jury issue was presented, and he deserved the chance of obtaining a favorable verdict or at least having the jury reject his claim.