**FARMERS EXPORT CO., INC.**

v.

**ENERGY TERMINALS, INC.**

Civ. A. No. 82–5600.

United States District Court, E.D. Pennsylvania.

Oct. 28, 1987.

Philip A. Tordella, Korn, Kline & Kutner, Philadelphia, Pa., for plaintiff.

Joseph P. Green, Krusen, Evans and Byrne, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HANNUM, Senior District Judge.

This matter was tried to the Court. The court now makes findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a). At issue is a crossclaim asserted by Farmers Export Company, Inc. (hereinafter "Farmers") against Energy Terminals, Inc. (hereinafter "Energy") and a crossclaim asserted by Energy against Farmers for indemnification or contribution.

In the underlying suit, the plaintiffs, Mario and Eileen Caltabiano, brought suit against Energy, Farmers and the Consolidated Rail Corporation (hereinafter "Conrail"). The plaintiffs' claims brought against these defendants were settled for the sum of $216,000.00, with co-defendants Energy and Farmers each paying half. Each party before the Court—that is, Farmers and Energy, seek reimbursement of the amount it contributed towards the settlement with the plaintiffs. Neither Farmers nor Energy assert a crossclaim against Conrail.

Energy contends that it is entitled to indemnification or contribution from Farmers because:

(1) Farmers was a lessor in possession of the subject premises at the time of the accident.

(2) Farmers negligently performed services gratuitously undertaken; and

(3) Farmers failed to notify Mario Caltabiano of a dangerous condition which existed on the subject premises at the time it leased this property to Energy.

Farmers argues that it is entitled to indemnification or contribution from Energy because:

(1) Energy exercised control over the work performed by the plaintiff and did so negligently;

(2) Farmers cannot be held liable for actions gratuitously undertaken because of the operation of the so-called "borrowed servant" doctrine;

(3) Farmers' negligence, if any, was secondary or passive as opposed to Energy's primary or active negligence; and

(4) Farmers is entitled to be fully indemnified under clause 9.02 of the sublease and operating agreement entered into between Farmers and Energy (hereinafter "the parties").

The Court, after evaluating the briefs, hearing testimony, and analyzing the exhibits, finds that Farmers and Energy are both tort feasors with respect to plaintiffs' injuries. The Court further finds that under Pennsylvania's Comparative Negligence Law, 42 Pa.C.S.A. § 7102(b), Energy is responsible for eighty percent of plaintiffs' damage award, and Farmers is responsible for twenty percent.

## STANDARD OF REVIEW

A district court has full discretion in evaluating the evidence as would the trier of fact in a jury trial. As will be discussed below, credibility of witnesses has played a significant role in resolving the issues of fact before the Court. The Court, after a brief recitation of the facts, will address the issues presented for decision.

## FACTS

Conrail owned the premises located at 2870–2890 East Allegheny Avenue, Philadelphia, at the time of the accident which is the subject of this litigation. Farmers was a lessee of the premises during July, 1982, the month in which the accident occurred. During that month, Energy was the sublessee of the portion of the property on which the accident took place. The property in question was grain bin number 8, and had been assigned by Farmers to Energy as per their sublease agreement.

Energy, through its project manager Alan Gibbs, contracted Highgate Steel (hereinafter "Highgate") to perform work in bin 8 for the purpose of converting it from a grain-handling apparatus to a coal-handling one. As recently as a month before the accident, Farmers possessed the bin according to its lease agreement with Conrail, and used it to hold corn. Plaintiff Mario Caltabiano was the Highgate employee performing the welding work in bin 8. During the conversion process, Mario Caltabiano's torch ignited some grain dust in the chute connected to the bin, injuring him seriously.

## ISSUES PRESENTED

### I. Control

Because the issue of control figures so prominently in this litigation, the Court will address it first. Energy asserts that Farmers, as landlord in possession and control of the premises, is responsible for injuries caused by a dangerous condition on the premises; the dangerous condition being grain dust which remained in bin 8 after it was transferred to Energy.

It is well settled in Pennsylvania that the question of whether a landlord is in control of a leased premises is a factual one for the jury. See Pierce v. Philadelphia Housing Authority, 337 Pa.Super. 254, 486 A.2d 1004 (1985); See also Pratt v. Scott Enterprises, 421 Pa. 46, 218 A.2d 795 (1966). According to Pierce, the wording of the lease agreement is a significant factor in resolving the question of control. Id. 486 A.2d at 1007. Covenants stipulating that one party shall "repair or [maintain]" the premises or maintain "personal possession" are strong indicia of control. Id., 486 A.2d at 1007.

In the instant case, clause 2.02 of the sublease agreement guarantees Energy "exclusive use" of the property on which the accident occurred. Clause 6.03 further provides that Energy shall make at its own expense all repairs, maintenance, and improvements to the leased property. Finally, clause 6.01 states that Energy is required to pay for any improvements to the leased property it would make regarding its coal operations, although Energy was not obliged by this clause or any other clause in the contract to conduct coal operations at all. These bargained-for stipulations in the sublease agreement reflect that both parties intended that Farmers stand as a landlord out of possession and control of the leased premises.

Further support for this conclusion can be found from examining the parties' respective actions taken towards the initiation and direction of the conversion pro-

cess on the leased premises. Acting consistently with the above-mentioned contractual provisions, Energy assumed complete control over selecting, paying, and directing Highgate and Caltabiano in the conversion of bin 8. *See* R.T. 88, 93. The Court is not persuaded by Energy's contention that Farmers' placement of Joseph Foisy on the premises during working hours before the accident and its effecting remedial measures, after the accident, constitute control over the premises as a matter of law. Foisy was merely a fire watch instructed to look out for Farmers' adjacent property. At no time, did Foisy direct Highgate employees on the premises. *See* R.T. 39. Farmers' actions taken after the accident were directed and paid for by Energy. Thus, these post-accident remedial measures are not conclusive on the issue of control. See R.T. 82–83.

Rather, the explicit wording of the sublease agreement and the actions taken by Energy concerning the activities occurring on the leased property, suggest and this Court finds that Farmers was a landlord out of possession and control of the leased premises when plaintiff sustained his injuries.

## II. *Liability of Farmers as a Landlord out of Possession*

■ The Court will now address the issue of whether Farmers is liable in this matter as a landlord out of possession. A landlord out of possession is not responsible for bodily harm suffered by business invitees of the lessee. *See Henze v. Texaco, Inc.*, 352 Pa.Super. 538, 508 A.2d 1200 (1986). Mario Caltabiano was a business invitee of Energy while working on bin 8 when the accident occurred. R.T. 88, 93. Thus, Farmers is not responsible for his injuries as per this general rule. However, there are four exceptions to this rule.

■ First, a landlord out of control who contracts to make repairs, but either refuses to make them, or performs them in a negligent manner, is liable for resulting bodily injuries to a lessee's business invitee. *See Klais v. Guiton*, 344 Pa. 600, 26 A.2d 293 (1942). In the case at bar, Farm-

ers never contracted to make any repairs, so this exception does not apply.

■ Second, liability can enure to a landlord out of possession if he knew or should have known the leased premises were to be used for purposes involving admission to the public. *See Yarkosky v. The Caldwell Store, Inc.*, 189 Pa.Super. 475, 151 A.2d 839, 842 (1959). The public was never supposed to be admitted to bin 8, making this exception inapplicable.

■ Third, the landlord can be liable when he retains control over a portion of the property which is necessary to the safe use of the leased property, or, if he shares with the lessee the property on which the accident occurred. *See Smith v. M.P.W. Realty Co.*, 423 Pa. 536, 225 A.2d 227, 229 (1967). *See also Pagano v. Redevelopment Authority, etc.*, 249 Pa.Super. 303, 376 A.2d 999, 1007–08 (1977). None of the property retained by Farmers was necessary to the safe use of the property leased by Energy, and Farmers did not reserve the right to share any portion of bin 8 with Energy. *See* Clause 2.02 of the sublease agreement.

■ Fourth, a landlord out of possession is liable for injuries when he conceals, or fails to disclose, any condition which involves unreasonable risk of physical harm to persons on the property, and the lessor has reason to believe that the lessee will not discover this condition. *See Doyle v. Atlantic Refining Co.*, 357 Pa. 92, 53 A.2d 68, 71 (1947). In the case at bar, Energy, through project manager Alan Gibbs, inspected bin 8. *See* Alan Gibbs Deposition p. 104, line 17. Gibbs had converted many grain-handling facilities to coal-handling facilities in the past. *See* R.T. 97. Furthermore, Mr. Gibbs admittedly was knowledgeable of the safety practices required in welding. *See* R.T. 177. Because of his knowledge of the conditions in the bin and his ability to appreciate the possible risks, Alan Gibbs had at least constructive knowledge of any existing dangerous condition. Therefore, this final exception does not apply.

The Court finds that Farmers was a landlord out of possession of bin 8 at the time of the accident. Therefore, the general rule of no liability for such landlords for harm to the business invitees of their lessees applies. None of the four recognized exceptions to this general rule are applicable to the facts of the case.

While the above discussion of Pennsylvania law relating to control fails to impose liability on Farmers for plaintiff's injuries, the following analysis supports the conclusion that Energy is at least partially liable.

### III. *The Liability of Energy*

■ In Pennsylvania, a possessor of land who retains control over the work of an independent contractor is liable for the harm caused by his failure to use reasonable care in exercising such control. *See Crane v. I.T.E. Circuit Breaker Company*, 443 Pa. 442, 278 A.2d 362 (1971). *See also Quinones v. Township of Upper Moreland*, 293 F.2d 237 (3d Cir.1961). The record reflects that Energy retained substantial control over Highgate. As discussed above, Energy selected and paid the independent contractor for all work performed on bin 8. William Jacuk, general foreman and estimator for Highgate, testified that in a conversation between Gibbs, Caltabiano, and himself, the men decided that Caltabiano would take orders from Gibbs. *See* R.T. 93. Gibbs went into detail with Caltabiano concerning the manner in which the welding was to be performed in the bin, and even ordered him to do various other jobs on the side. *See* Caltabiano Deposition at 66, 68, 73. From this evidence, the Court concludes that Energy retained enough control over Highgate's work to trigger its liability for failure to use reasonable care in the exercise of its control.

Alan Gibbs was experienced in the conversion of graineries to coal-handling facilities. He was also knowledgeable of the procedures required for safe welding. Furthermore, he acknowledges the fact that he was aware that Caltabiano was going to weld on the day of the accident. *See* R.T. 177. Gibbs knew that an asbestos cloth was necessary to prevent a welding torch from igniting a substance such as the grain dust in the bin. In fact, he ordered that such a cloth be used for welding in an unrelated project that took place before the accident at issue. *See* R.T. 177. Gibbs further testified to knowing that Caltabiano was working without such an asbestos cloth on the day of the accident. *See* R.T. 178.

■ While Mr. Gibbs acknowledges his expertise and awareness as detailed above, he denies having ever reported to either Caltabiano or Jacuk that it was safe to weld in bin 8. *See* R.T. 181–182. Energy accordingly contends that it cannot be held responsible for negligently controlling the work-site. However, there exists ample testimony from Jacuk and Caltabiano to conclude that Gibbs did in fact advise them that it was safe to work in the bin. William Jacuk testified that Gibbs declared on several occasions that it was safe to work in bin 8. *See* R.T. 95, 117. Plaintiff Caltabiano likewise contends that Gibbs advised that it was safe. *See* Caltabiano Deposition at 117.

To resolve this conflict in testimony, the Court has assessed the credibility of the witness, Alan Gibbs, an interested party to this litigation. His testimony as described above is contradicted by the testimony of William Jacuk and Mario Caltabiano. The Court is not persuaded by the account given by Mr. Gibbs and regards the statements made by Jacuk and Caltabiano as accurate depictions of the events that took place before the accident. Mr. Gibbs' account of the events at issue is inconsistent with his unquestioned technical knowledge and the role he played for Energy in effecting the proposed conversion. However, the Court's decision to reject in part the testimony of Mr. Gibbs is also based on intangibles such as Gibbs' demeanor at trial and other like things.

Because of Gibbs' knowledge of and actions taken with respect to the welding conducted in bin 8, this Court finds Energy liable in part for the injuries suffered by Caltabiano for failing to use reasonable care in exercising control over the conver-

sion work done by Highgate.[1] The exact apportionment of damages will be delineated later in this opinion.

## IV. *Good Samaritan Theory*

 The Pennsylvania law concerning the good samaritan theory is codified in the Restatement of Torts (Second), Section 324A. *See Santillo v. Chambersburg Engineering Co.*, 603 F.Supp. 211 (E.D.Pa. 1985). *See also Cantwell v. Allegheny County, Pa.*, 506 Pa. 35, 483 A.2d 1350 (1984). Section 324A provides that:

> One who undertakes, gratuitously or for a consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if:
>
> (a) his failure to exercise reasonable care increased the risk of such harm, or
>
> (b) he had undertaken to perform a duty owed by the other to the third person, or,
>
> (c) the harm is suffered because of reliance of the other or the third person on the undertaking.

Restatement (Second) Torts, Section 324A.

As detailed above, Farmers owed no duty to Energy or Caltabiano upon transferring bin 8 to Energy. However, the subsequent actions taken by its plant manager Terry Flann make Farmers liable under the good samaritan rule.

Flann testified that on July 9, 1982, three days before the accident, he was requested by Gibbs to inspect, and in fact did inspect, bin 8. *See* R.T. 33. He knew that three bushels of corn were in the bin as late as the third week of June, and that residual dust could make cutting with a torch extremely dangerous. *See* R.T. 31, 38. Flann knew from a safety class he had taken that one should use a twelve-foot cord light in a bin in order to properly inspect it. *See* R.T. 77–78. Yet, he undertook his July 9th inspection of bin 8 without the aid of such a light. *See* R.T. 35. Furthermore, Flann possessed, knew how to use, and actually did use (after the accident) a machine designed to test the combustibility of the atmosphere in the bins. *See* R.T. 53. However, he did not use this machine while inspecting bin 8 at Gibbs' request on July 9th. *See* R.T. 53. Finally, Flann told both Jacuk and Caltabiano that the bin was safe for welding. *See* Jacuk deposition at 27; R.T. 38. Caltabiano relied on these assurances to his detriment. *See* Caltabiano deposition at 84.

The Court concludes that the requirements for Farmers' liability under the Pennsylvania good samaritan law have been met. First, Flann's inspection was undertaken "gratuitously," for the benefit of another (Gibbs). Second, Flann's experience in the field is such that he should have recognized that his inspection was "necessary for the protection of a third person" (Caltabiano). Third, the manner in which he inspected the bin was unreasonable in light of his awareness of proper safety procedures. Finally, Caltabiano relied in part on Flann's conclusion that the bin was safe to weld in. Accordingly, Farmers is also liable in part for plaintiff's damages.[2]

---

1. Energy's claim that Farmers is liable for failing to fulfill a duty to disclose an existing dangerous condition to plaintiff Caltabiano is rejected. The Court does not find that Farmers, as a landlord out of possession and control of the premises, had a duty to disclose the existence of dangerous conditions, discovered or discoverable by lessee Energy, to a business invitee of Energy.

2. Farmers' claim that it is absolved from good samaritan liability because of the "borrowed servant" doctrine is rejected. The rule in Pennsylvania is set out in *Walton v. Harold M. Kelly, Inc.*, 218 Pa.Super. 28, 269 A.2d 347 (1970). According to *Walton:*

> One who is in the general employ of another may, with respect to certain work, be transferred to the service of a third person in such a way that he becomes, for the first time being and in the particular service which he is engaged to perform, an employee of that person. *Id.*, 269 A.2d at 349–350.

The Pennsylvania Superior Court in *Walton* instructs that this rule only applies if the "servant" passes under the other party's right to control with regard not only to the work to be done but also "to the *manner* of its performance." (emphasis added). *See Id.*, 269 A.2d at p. 349. The court does not find that Energy attempted to, or even had the capacity to, direct Flann as to the

The exact apportionment of liability between Farmers and Energy will be set out later in the opinion.

## V. *Contractual Indemnification*

■ Farmers claims to be entitled to full compensation from Energy because Energy's breach of two clauses in the sublease agreement activates a third clause that causes automatic indemnification. Clause 9.02 provides that the parties agree to indemnify each other and reimburse each other with respect to claims, liabilities, fines, etc., arising out of a failure to perform any obligation under the lease. One such obligation is set out in clause 6.02, requiring Energy to take out liability insurance for both property damage and personal injuries, with Farmers as the named insured. Clause 6.01 requires Energy to maintain safely bin 8. There is evidence in the record reflecting that Energy might have breached both of these obligations. However, this Court, assuming *arguendo* that Energy breached those obligations, finds that these breaches do not activate clause 9.02 and serve as a vehicle to indemnify Farmers for its own negligence. The law disfavors a party's attempt to insulate itself from negligence liability by contract. *See Dilks v. Flohr Chevrolet*, 411 Pa. 425, 192 A.2d 682 (1963). A contract for indemnity against personal injuries should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in *unequivocal terms.* (emphasis added). *See Pennsylvania Manufacturers' Association Insurance Company v. Lumbermens Mutual Casualty Company*, 648 F.2d 914, 918 (3d Cir.1981). *See also Pittsburgh Steel Co. v. Patterson-Emerston-Comstock, Inc.*, 404 Pa. 53, 171 A.2d 185, 188 (1961).

Clause 9.02 makes no explicit reference to Farmers' right to indemnification in the event of its own negligence. Under well-established Pennsylvania law, this Court will not now construe the general language of the sublease agreement in favor of such a finding.

## VI. *Primary/Secondary Liability*

■ A secondarily liable party is one who has been compelled, without fault, to pay damages occasioned by the negligence of another—the primarily liable party. Under Pennsylvania law, a party who is secondarily liable for an injury to another can be fully indemnified by the party who is primarily liable. *See Levy v. First Pennsylvania Bank, N.A.*, 338 Pa.Super. 73, 487 A.2d 857 (1985). The recent case of *Sirianni v. Nugent Brothers, Inc.*, 509 Pa. 564, 506 A.2d 868 (1986), outlines the legal approach to this doctrine.

According to *Sirianni*, a party seeking indemnity must not have "had *any part* in causing the injury." (emphasis original). *Id.*, 506 A.2d at 871. If this party participated in the events leading up to the injury, and was not implicated merely because of some legal relation between the parties, then the party cannot be indemnified under primary/secondary liability theory. When both parties are involved in causing the accident:

> There is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either party against the other, in such a case. There is only a common liability and not a primary and secondary one, even though one may have been much more negligent than the other. *Id.*, 506 A.2d at 871, quoting *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368, 371 (1951). *See also Helz v. Pittsburgh*, 387 Pa. 169, 127 A.2d 89 (1956).

■ In the case at bar, both parties were involved in the events leading up to the injury, and each has been found negligent. Therefore, common liability exists, and the principles of comparative negligence will be utilized to apportion liability.

The Court finds that the Pennsylvania Comparative Negligence Statute, 42 Pa. C.S.A. § 7102, governs the apportionment

---

manner of his inspection. As such, Flann cannot be deemed a borrowed servant for liability purposes.

of liability and damages in this case. The statute states that:

> Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. Any defendant who is so compelled to pay more than his percentage share may seek contribution.

42 Pa.C.S.A. § 7102(b).

After careful analysis of the record, exhibits, and briefs submitted by counsel, this Court concludes that Farmers was compelled by the settlement to pay damages in excess of its amount of causal negligence. In its discretion, this Court finds that contribution is in order such that Farmers is responsible for twenty percent of the damages award and Energy is responsible for eighty percent.