582 A.2d 353

Anita M. HIMES, Appellant,

v.

NEW ENTERPRISE STONE & LIME COMPANY, INC., a Corporation; Raymond M. Eger and Nancy Eger; Victor Lingenfelter and Caroline Lingenfelter; Ernest E. Diehl and Catherine Diehl; Stephen J. Toth and Deborah Toth; Raymond Black; Madison F. Yohn and Larry M. Himes and Sheila D. Himes, Appellees,

v.

Logan E.C. STIFFLER, Sherry A. Stiffler, William C. Wright and Ramona B. Kay, Appellees.

Jeremy MOYER, a Minor, by Sharon M. MOYER, His Guardian, and Sharon M. Moyer, Appellants,

v.

NEW ENTERPRISE STONE & LIME COMPANY, INC., a Corporation; Raymond M. Eger and Nancy Eger; Victor Lingenfelter and Caroline Lingenfelter; Ernest E. Diehl and Catherine Diehl; Stephen J. Toth and Deborah Toth; Raymond Black; Madison F. Yohn; and Larry M. Himes and Sheila D. Himes, Appellees,

v.

Sheila D. HIMES; Sharon M. Moyer; Logan E.C. Stiffler; Sherry A. Stiffler; William C. Wright; and Ramona B. Kay, Appellees.

Superior Court of Pennsylvania.

Argued June 6, 1990.

Filed Sept. 28, 1990.

Reargument Denied Nov. 9, 1990.

302

J. Bradley Kearns, Pittsburgh, for appellants.

Alan R. Krier, Altoona, for New Enterprise, appellee.

R. Thomas Strayer, Johnstown, for Eger, appellees.

Gerald M. Nelson, Hollidaysburg, for Lingenfelter, appellees.

William J. Stokan, Altoona, for Black, appellee.

Warren D. Ferry, Pittsburgh, for Yohn, appellee.

Louis C. Long, Pittsburgh, for Himes, appellees.

Before KELLY, HUDOCK and MONTGOMERY, JJ.

HUDOCK, Judge:

These appeals are from final orders of the Court of Common Pleas of Blair County granting summary judgment in favor of all the appellees in two separate personal injury cases. Because these cases involve substantially

similar parties and issues, the merits of both appeals will be considered together. We affirm.

The two appeals arise from two separate incidents which occurred on a privately-owned bridge which provided the only means of access from Legislative Route 07049 to the individual appellees', (homeowners), residences. The bridge in question was allegedly designed and constructed by New Enterprise Stone & Lime Co., (New Enterprise), after the original steel-truss bridge collapsed in 1979. The bridge abutments, however, remained intact. Raymond Eger, on behalf of himself and the other residents of the area, sought to replace the cartway of the bridge with pre-stressed concrete beams. To this end, Eger entered into a contract with New Enterprise which provided that the latter would supply and install two pre-stressed concrete beams, with diaphragms, on the existing abutments. In its proposal, New Enterprise suggested the placement of a railing, and obtained a quote from a supplier of this product for installation on the bridge deck. This recommendation was rejected by the individual appellees due to the cost involved. While wheelstop pins were subsequently put in place, the wheelstops were never installed. Instead, unattached wooden planks from the prior bridge floor were placed along the inside of the pins so as to act as a wheelstop.

Briefly, the facts surrounding the appeal in which Anita Himes is appellant, (Himes appeal), are as follows: On June 28, 1987, Ms. Himes went to her brother's residence [1] in order to repair and test drive her motorcycle which had been stored there. She crossed the bridge in question, as she had at least one hundred times before, (Deposition Testimony of Anita M. Himes, p. 27), to get to her brother's home. Ms. Himes made a test drive of her motorcycle from her brother's residence, went across the bridge, then turned around and crossed back over the bridge. When she initially crossed the bridge, she noticed one of the planks that had been placed along the side of the bridge was out of place,

---

1. Ms. Himes' brother, Larry M. Himes, and his wife, Sheila D. Himes, are two of the appellees in both appeals.

protruding toward the center of the bridge deck. In her trip back across the bridge, Ms. Himes struck this plank, causing her to lose control of her motorcycle and fall over the side of the bridge to the creek eight to ten feet below.

A brief factual summary of the appeal in which Jeremy and Sharon Moyer are the appellants, (Moyer appeal), is as follows: On October 23, 1987, Jeremy Moyer, then six-years-old, alighted from his schoolbus near the highway to which the bridge in question provided access. A schoolmate of Jeremy removed a roll of tape from Jeremy's pocket and threw it into the creek beneath the bridge. Jeremy proceeded to the residence of appellees Richard and Sheila Himes. Jeremy informed Sheila, who was baby-sitting his younger brother at the time, of what occurred regarding the tape. Although Sheila warned Jeremy not to attempt to retrieve the tape until the older children arrived home from school, Jeremy went down to the bridge to look for the tape. While standing near the edge of the bridge and looking down into the water, Jeremy lost his balance and fell into the creek below.

Appellants in both cases brought actions in trespass against the owners, past and present, of the residences located across the bridge and New Enterprise, the alleged seller of the bridge in question. The complaints alleged that the individual appellees negligently caused the appellants' injuries by failing to maintain the bridge and install side rails or similar barriers upon it. A cause of action under Section 402A of the Restatement (Second) of Torts was alleged against New Enterprise on the ground that it sold a dangerously defective product, i.e., a bridge without railings or similar barriers. The appellees, in both cases, filed separate motions for summary judgment, which were granted by the trial court, and the appellants' suits were dismissed. The trial court held that, as a matter of law, the individual appellees were under no duty to maintain the bridge by installing side rails or similar barriers, that the conduct of both appellants constituted assumption of the risk of harm, and that the homeowners did not violate any

duty owed to appellants, who were both gratuitous licensees upon the land, at the time of their respective accidents. Having reached these conclusions, the trial court found it unnecessary to examine the merits of the strict liability claim against New Enterprise.

Both appellants argue that the trial court erred as a matter of law by granting summary judgment to each appellee, and raise several identical issues on appeal. Pennsylvania Rule of Civil Procedure 1035(b) provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Dume v. Elkcom Co.*, 368 Pa.Super. 280, 533 A.2d 1063 (1987). When reviewing a trial court's imposition of summary judgment, this court has stated:

> To determine the absence of a genuine issue of fact, we must view the evidence in the light most favorable to the non-moving party and any doubts must be resolved against the entry of judgment. In so doing, we accept as true all well-pleaded facts in appellant's pleadings and give appellant the benefit of all reasonable inferences to be drawn therefrom. Summary Judgement is appropriate only in those cases which are clear and free from doubt.

*Bobb v. Kraybill*, 354 Pa.Super. 361, 364, 511 A.2d 1379, 1380 (1986) (Citations omitted.)

Using these standards to guide us, we are thus required to determine the existence of any genuine issues of material fact which the trial court may have overlooked. In so doing, we may reverse the trial court only where there has been an error of law or a manifest abuse of discretion. *Travaglia v. C.H. Schwertner & Son*, 391 Pa.Super. 61, 570 A.2d 513 (1989). Thus, we must determine whether the trial court properly concluded that no genuine issue of material fact existed and whether both appellants' claims were barred as a matter of law.

■ Appellants first claim that the trial court erred in finding that the homeowners did not owe a duty to them. All parties to these two cases agree that appellants' status while on the bridge was that of a gratuitous licensee. After careful review, we agree that this was a proper characterization. The duty owed a licensee in Pennsylvania was established by our Supreme Court in *Sharp v. Luksa*, 440 Pa. 125, 269 A.2d 659 (1970) when it adopted the language of Section 342 of the Restatement (Second) of Torts. Section 342 provides:

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land, if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

*Id.*, 440 Pa. at 129, 269 A.2d at 661.

The conjunctive wording of the above-cited section of the Restatement makes it clear that a possessor of land is subject to liability only if all three criteria are present. The trial court concluded that subsection (c) was not present in either of these cases. We agree.

■ Applying the Restatement criteria to the Himes appeal, the deposition of Ms. Himes clearly indicates that she was very familiar with the bridge's condition, having traversed it over a hundred times. She also testified that she was well aware of the position of the specific plank which she avoided successfully when first crossing the bridge on her motorcycle. These admissions by Ms. Himes render this case indistinguishable from the facts and holding in *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983). In

*Carrender,* a Mrs. Carrender drove her car to the defendant's chiropractic clinic. She was quite familiar with the parking lot for the clinic because she had been receiving treatment there for approximately seven years. Although several convenient parking spaces were available that were free of ice and snow, Mrs. Carrender chose to park in a spot where a sheet of smooth ice covered the area between her car and an adjacent vehicle. She again observed the ice patch while exiting her car, but was able to traverse it by holding on to the car next to her. Upon her return from the clinic, Mrs. Carrender again encountered the icy condition. This time, however, as she stood on the ice and searched for her keys, she slipped and fell and fractured her hip.

The Pennsylvania Supreme Court, holding that the defendant clinic did not owe a duty to prevent harm to Mrs. Carrender from a known and obvious danger, reversed this Court and directed the trial court to enter a judgment n.o.v. The plaintiff in *Carrender* was a business invitee of the defendant and was, therefore, owed a duty to be protected from foreseeable harm. *Id.* This duty represents a higher standard of care than that owed Ms. Himes as a licensee in the present case. Nevertheless, as in *Carrender,* a duty on the part of the possessor of the land is not present in the present case because Ms. Himes knew or had reason to know of the condition of the bridge and the risk involved in traversing it.

 Applying these same standards to the Moyer appeal, the trial court once again concluded correctly that the criteria of subsection (c) of Section 342 of the Restatement (Second) of Torts was not present. While this Court is aware that Jeremy was at a youthful age when the accident occurred and it may be more difficult for him to know the risk involved in many things, Pennsylvania courts have long since recognized that:

> [N]o danger is more commonly realized or risk appreciated, even by children, than that of falling. Consciousness of the force of gravity results almost from animal instinct. Certainly, a normal child merely seven years of

age—indeed any child old enough to be a child at large—knows that if it steps or slips from a tree, a fence, or other elevated structure it will fall to the ground and be hurt. It may be that some children, while realizing the danger will disregard it out of the spirit of bravado, or because, to use the language of the Restatement, "of immature recklessness," but the possessor of land is not to be visited with responsibility for accidents due this trait of children of the more venturesome type."

*McHugh v. Reading Company*, 346 Pa. 266, 269, 30 A.2d 122, 123 (1943).

The deposition of Jeremy Moyer amply demonstrates that he was aware of the fact that the bridge had no guardrails and of the danger posed by such a condition. Jeremy further testified that he had traversed the bridge many times without assistance. He also testified that he had been specifically warned that it was possible to fall off the bridge. Finally, Jeremy testified that it was of his own volition that he was peering over the side and lost his balance. Thus, we conclude that Jeremy was both aware of the condition of the bridge and the risk involved in encountering it, thereby precluding him from meeting the requirements of subsection (c) of Section 342 of the Restatement (Second) of Torts.

Appellants next claim that the trial court erred in deciding, as a matter of law, that the homeowners were under no duty to maintain the bridge. In support of this assertion, appellants rely on a clause within a right-of-way agreement that the parties thereto shall share equally "all costs of maintenance, reconstruction, repairs and renewal of the said driveway and of the bridge across the creek to the highway." This agreement creates a duty upon each homeowner or their successors to share an equal portion of the costs incurred in maintaining the bridge. This financial duty owed to one another does not impose upon the homeowners the type of duty to third parties which the appellants claim is created. As previously discussed, the duty

owed to each appellant is determined by their individual status as gratuitous licensees.

■ Although questions as to whether the danger arising from a condition on a possessor's land, and the risk attendant thereto, were known are usually questions of fact for the jury, this question may be decided by the court where reasonable minds could not differ as to the conclusion. *Carrender v. Fitterer, supra.* In both cases now under consideration, the appellants' own testimony compels the conclusion, as a matter of law, that the homeowners were under no duty to provide further safety features for the bridge or to warn of its present condition. Having found no such duty to exist, we need not reach the claims of error regarding assumption of the risk.[2]

■ Appellants' final claim is that the trial court erred in determining, as a matter of law, that appellee New Enterprise owed no duty to them under Section 402A of the Restatement (Second) of Torts. In support of their claim, appellants assert that New Enterprise was a seller of a substantially defective product, namely the bridge in question. New Enterprise maintains that it sold only the two concrete beams to the individual appellees and that it is not liable for the failure of the individual appellees to accept their recommendation of side rails for the bridge. Moreover, New Enterprise maintains that the railings they recommended for installation on the bridge were not an item manufactured or sold by them. Thus, New Enterprise claims that the appellants have misidentified the product which was allegedly defective. We agree. A careful review of the record discloses undisputed evidence that the bridge design recommended by New Enterprise was not to be completed solely by that corporation and that the concrete beams supplied by New Enterprise were merely one component of the entire bridge. Appellants have not al-

---

2. Even though we would be inclined to agree that both appellants assumed the risk of their injuries, the trial court's decision to discuss the merits of this claim in each case was unnecessary once no duty was found to exist. *See Carrender v. Fitterer,* 503 Pa. at 187, 469 A.2d at 125.

leged any defect as to the beams supplied by New Enterprise. Rather, their claim is that the bridge as constructed was a defective product.

The fact that New Enterprise designed the bridge to include railings does not, as suggested by appellants, subject them to liability irrespective of the homeowners' decision to install them. In *Wenrick v. Schloeman–Siemag Aktienge–Sellschaft*, 523 Pa. 1, 564 A.2d 1244 (1989), Mr. Wenrick was crushed by an extrusion press while he was making repairs to the machine. Wenrick's wife brought an action in strict liability, negligence and breach of warranty against SMS AG, the manufacturer and designer of the press, and Eaton Corp., the successor to Cutler–Hammer, Inc., the supplier of the electrical control system of the press. Mrs. Wenrick's theory at trial was that the press was inadvertently triggered by a workman descending a pair of steps into the service pit beneath the press. The defect identified by experts for both parties was indeed an unguarded condition of an electrical switch near the pair of steps in question. The jury verdict was in favor of Wenrick as to the strict liability and negligence counts against SMS AG and Eaton Corp. Eaton Corp. filed post-trial motions, including a motion for judgment n.o.v., which were denied by the trial court. On appeal, this Court reversed the order denying Eaton Corp.'s judgment n.o.v. as to both the strict liability and negligence counts. Upon further appeal, the Pennsylvania Supreme Court upheld this Court's ruling.

In upholding the reversal of the trial court regarding its decision on the motion for judgment n.o.v., our Supreme Court recognized that the mere fact Eaton Corp.'s corporate predecessor designed the electrical system did not subject it to liability:

Specifically, there is no evidence that Cutler–Hammer, in designing the electrical control system, had any indication of the placement of the service pit located under the press or of the steps into the pit. Since, as the plaintiff's expert testified, the defect consisted of an unguarded switch located above these access steps, and since the

312

placement of the pit, the steps, the rails on which the switch was located, and the switch itself were all decisions made by SMS AG in manufacturing the press, and none were dictated by the electrical design supplied by Cutler–Hammer, the evidence is not sufficient to sustain the strict liability claim against Eaton, Cutler–Hammer's successor.

*Id.*, 523 Pa. at 6, 564 A.2d at 1246–47.

In the present cases, the defect alleged was the failure to install guardrails on the side of the bridge. The undisputed evidence in the record clearly reflects that the placement of these rails was not dictated by New Enterprise. The decision regarding their placement was a determination to be made by the individual appellees. Thus, a genuine issue of material fact did not exist and the trial court did not abuse its discretion in granting New Enterprise's motion for summary judgment on the strict liability claim.

The orders at No. 01565 Pittsburgh 1989 and No. 00042 Pittsburgh 1989 are affirmed.