682 A.2d 370

**Cynthia LONG and Deborah Long, Appellants,**

v.

**Diane MANZO**

v.

**Margaret HAWKINS.**

Superior Court of Pennsylvania.

Argued March 5, 1996.

Filed Aug. 29, 1996.

452

454

Lewis A. Walder, Langhorne, for appellants.

Jennifer A. Lawley, Philadelphia, for Diane Manzo, appellee.

John J. Hart, Doylestown, for Margaret Hawkins, appellee.

Before DEL SOLE and JOHNSON, JJ., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

In this appeal, Cynthia and Deborah Long, appellants, challenge the grant of a compulsory non-suit in favor of appellees. We affirm.

The trial court has provided us with a concise summary of the applicable facts:

On July 24, 1986, Plaintiff Cynthia Long, then thirteen years old, was left at home with her eleven year old sister while their mother was at work. As was the custom that summer, the two girls walked to a nearby playground to meet their friends. At the playground the girls met up with several children including additional Defendant Margaret Hawkins, who was the sixteen year old baby-sitter for Defendant Diane Manzo's three children. Plaintiff Long returned to the Manzo home with Ms. Hawkins and the Manzo children.

In the back of the Manzo residence was an above-ground pool. Over the course of the summer, Plaintiff had gone swimming in the pool anywhere from one to five times and she knew that the pool's water level was only to her waist. Despite several different warning signs indicating that diving was prohibited, Plaintiff accepted a dare to dive into the

pool. Plaintiff misjudged the depth of her dive and hit her head on the bottom of the pool sustaining serious injuries to her neck.

Trial Court Opinion dated October 10, 1995 at 1–2.

Appellants initiated the underlying negligence action against appellee Manzo by filing a complaint on July 27, 1987. Diane Manzo then filed a complaint to join Margaret Hawkins as an additional defendant. A jury trial began on March 30, 1995. On the second day of trial and at the close of appellants' case, appellees successfully moved for a compulsory nonsuit. The trial court agreed with appellees' characterization of Cynthia Long as a trespasser and concluded that appellants had failed to establish that appellees' had breached any duty owed to trespassers. After the trial court denied appellants' ensuing Motion for Post–Trial Relief, appellants filed this appeal.

■ A judgment of nonsuit is properly entered only if the factfinder, viewing all the evidence and all reasonable inferences from the evidence in the light most favorable to the plaintiff, could not reasonably conclude that the elements of a cause of action have been established. *American States Insurance Co. v. Maryland Casualty Co.*, 427 Pa.Super. 170, 187, 628 A.2d 880, 889 (1993). Moreover, the facts must be so clear that reasonable persons could not differ about the finality of their evidentiary significance. *Zito v. Merit Outlet Stores*, 436 Pa.Super. 213, 216, 647 A.2d 573, 574 (1994); *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192 (1987), *appeal denied*, 517 Pa. 607, 536 A.2d 1331 (1987) (noting that a trial court must allow an issue to go to the jury unless it is so clear that reasonable minds could not possibly differ over its resolution).

■ According to appellants, the trial court should have allowed the jury to adjudicate Cynthia Long's status as trespasser or licensee. Based on the evidence of record, which we need not here relate, we agree that the classification of Cynthia Long as either a trespasser or a licensee should have been resolved by the jury. Nevertheless, we recognize that Cynthia failed to present sufficient evidence to raise a jury

question as to appellees' liability to her regardless of her status as trespasser or licensee. Absent that evidence, Cynthia could not establish the elements of a negligence cause of action. Consequently, we find that the trial court properly granted appellees' motion for compulsory nonsuit.

Were the jury to deem Cynthia a licensee, then the landowners would be subject to liability for physical harm caused to her by a condition on their land if:

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

Restatement (Second) of Torts, § 342 (adopted in *Sharp v. Luksa*, 440 Pa. 125, 269 A.2d 659 (1970)). Each of those three elements must be satisfied before a possessor of land will be subject to liability. *Himes v. New Enterprise Stone & Lime Company*, 399 Pa.Super. 301, 307, 582 A.2d 353, 356 (1990), *appeal denied*, 527 Pa. 618, 590 A.2d 758 (1991) *and* 527 Pa. 617, 590 A.2d 758 (1991). Satisfaction of the third element, that is whether the licensee knew or had reason to know of the condition and its attendant risks, is usually a question of fact for the jury. *Himes*, 399 Pa.Super. at 310, 582 A.2d at 358. This question may be decided by the court, however, if reasonable minds could not differ. *Id.*

In *Himes*, a panel of this court was presented with an appeal from an order granting summary judgment in favor of the landowners. Those landowners owned a bridge that provided the only access from the main road to the residence of the six year old appellee, Jeremy Moyer. A schoolmate of Jeremy's threw a roll of tape into the creek beneath the bridge. Jeremy walked to the bridge owners' home to advise them of the incident. Although one of the owners warned

Jeremy not to attempt to retrieve the tape until the older children arrived home from school, Jeremy returned to the bridge to search. While standing near the edge of the bridge and looking into the water, he lost his balance and fell into the creek. *Id.* at 305, 582 A.2d at 355.

During his deposition, Jeremy conceded that he was aware that the bridge lacked guardrails and that the lack of guardrails posed a danger. He also testified that he had traversed the bridge many times without assistance and had been specifically warned that it was possible to fall off the bridge. Regardless, he peered over the side of the bridge and lost his balance. *Id.* at 309, 582 A.2d at 357. After considering those facts, the *Himes* court concluded that Jeremy had failed to satisfy the criteria enumerated in subsection (c) of Section 342 of the Restatement (Second) of Torts. In demonstrating Jeremy's appreciation of the condition of the bridge and the risk involved in encountering it, this court relied on Jeremy's own deposition testimony. *Id.*

Similarly, in this case, Cynthia demonstrated through her testimony, as well as her conduct, that she understood or had reason to understand the risks involved in diving head first into a shallow swimming pool. At trial, Cynthia acknowledged that she had been swimming since she was about four years old. Two years before the accident, she joined and frequented a swim club. At the time of the accident, Cynthia was three days shy of her fourteenth birthday. She was preparing to enter the eighth grade at the end of the summer. N.T. 3/30/95 at 4, 6; N.T. 3/31/95 at 62–64. During that summer, Cynthia swam in the Manzo pool on about four or five occasions. Accordingly, she knew that the water was four feet deep and only reached her waist. N.T. 3/30/95 at 84–85. Although Cynthia noticed several "no diving" signs posted around the pool, she denies understanding the consequences of diving into a shallow pool. Instead, she claims that Mrs. Manzo posted those "no diving" signs to prevent the children from splashing water out of the pool:

Q. You thought these signs saying no diving meant no diving because we don't want the water splashed out of the pool?

A. I guess. It is hard to say, that was over nine years ago.

*Id.* at 75. The babysitter confirmed that Mrs. Manzo opposed diving "[b]ecause you always had to fill the water back up." N.T. 3/31/95 at 7. On that basis, appellants conjecture that the question of whether Cynthia appreciated the risks associated with diving into the four foot pool must be debated by a jury. We cannot agree.

Despite her protestations to the contrary, Cynthia revealed through statements, including those that we have already recounted, that she understood the risks of diving head first into a shallow pool. To further illustrate, we shall highlight the circumstances of this accident. Specifically, Cynthia admitted diving head first over a raft and into the shallow pool in response to a dare from one of the other children. N.T. 3/30/95 at 21. She defined a dare as "[w]hen somebody asks you to do something that is [dangerous]." *Id.* at 65. Moreover, Cynthia conceded that "[p]eople don't dare you to do safe things." *Id.* at 65.

During trial, Cynthia admitted that in 1986, she normally executed a "skim" dive when she thought the water was too shallow to accommodate a deep dive. N.T. 3/30/95 at 69. Likewise, in her deposition, she acknowledged that she normally did a "skim dive" as opposed to a deep dive when plunging into water of about four feet. Deposition of Cynthia Long 10/5/89 at 55. When asked if she was aware in 1986 that she should not dive into a shallow pool, Cynthia answered, "[s]ort of." *Id.* at 46.

Furthermore, Cynthia conceded that on the day of the accident, she noticed a pool-side sign that depicted a figure diving head first into a pool and striking its head on the bottom of that pool. N.T. 3/30/96 at 91–92. The word "danger" was written above the figure and the phrase "no diving" was written below. When asked what the word danger meant

to her in the summer of 1986, Cynthia responded, "[b]e careful." Deposition of Cynthia Long 10/5/89 at 64.

Consequently, through her testimony, Cynthia conveyed her cognizance of the risks associated with diving head-first into a shallow pool. Because Cynthia knew or had reason to know of those risks, appellees will not be held liable for physical harm caused to her in her capacity as a licensee. As no issue of fact remains to be decided by a jury, the motion for nonsuit was properly granted.

 Similarly, because Cynthia failed to present sufficient evidence to raise a question as to whether appellees breached any duty owed to trespassing children, the appellees in this case would not be subject to liability if the jury deemed Cynthia Long to be a trespasser. Section 339 of the Restatement (Second) of Torts outlines the duty owed by possessors of land to trespassing children:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement (Second) of Torts, § 399 (adopted in *Jesko v. Turk*, 421 Pa. 434, 219 A.2d 591 (1966)). The burden of

satisfying each of the above requirements rests with the trespassing child. *Scarborough by Scarborough v. Lewis,* 359 Pa.Super. 57, 75, 518 A.2d 563, 572–73 (1986), *appeal denied,* 518 Pa. 650, 544 A.2d 961 (1988) *and* 518 Pa. 651, 544 A.2d 962 (1988). Again, liability may only be imposed when all of the requirements of that section are present. *Jesko,* 421 Pa. at 437, 219 A.2d at 592. Appellants in this case have failed to present sufficient evidence to support the criteria listed in subsection (c). Although questions regarding a child's appreciation of danger should ordinarily be resolved by the jury, those questions may be decided by the court as a matter of law when the decision is clear and obvious. *Bethay v. Philadelphia Housing Authority,* 271 Pa.Super. 366, 375–76, 413 A.2d 710, 714–15 (1979).

A landowner's duty "does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them." *Prokop v. Becker,* 345 Pa. 607, 611, 29 A.2d 23, 25 (1942) (the thirteen year old plaintiff frequented a landing field about once or twice a week and saw many planes fly over the runway and land just beyond him; because the risk of being struck by a landing plane while riding a bicycle on that runway was obvious, the plaintiff failed to satisfy subsection (c) of section 339 of the Restatement). Generally, because ponds, pools, lakes, streams and other waters embody perils that are deemed to be obvious to children of the tenderest years, no liability attaches to a possessor of a pond. *Cooper v. City of Reading,* 392 Pa. 452, 463, 140 A.2d 792, 797 (1958) (quoting *Murdock v. Pennsylvania Railroad Company,* 150 Pa.Super. 156, 169, 27 A.2d 405, 410 (1942)). "Under certain circumstances, however, a body of water may present such an unusual danger that its maintenance without proper safeguards involves an unreasonable risk to trespassing children." *Cooper,* 392 Pa. at 463, 140 A.2d at 797. For example, the pool of water in *Cooper* looked like an oversized puddle but actually had a sixteen-foot deep "step-off" at its center. *Id.* Because the pool was deceptively shallow at its edges, it

created an unreasonable risk of harm to unsuspecting child trespassers. *Id.*

In this case, however, we are not presented with unusual circumstances. As stated, Cynthia was aware that the pool was only four feet deep and was able to see the bottom of the pool. Nevertheless, she chose to dive head first into the shallow water in response to a dare. The Comment to subsection (c) of the Restatement specifically exempts a landowner from liability for injuries to a child who appreciates the danger but chooses to encounter it through recklessness or bravado:

> The purpose of the duty is to protect children from dangers which they do not appreciate and not to protect them against harm resulting from their own immature reckless-ness in the case of known and appreciated danger. There-fore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved, but none the less [sic] chooses to encoun-ter it out of recklessness or bravado.

*Carter by Carter v. United States Steel,* 390 Pa.Super. 265, 288, 568 A.2d 646, 657 (1990), *appeal denied,* 526 Pa. 626, 584 A.2d 310 (1990), *reversed in part on other grounds,* 529 Pa. 409, 604 A.2d 1010 (1992), *cert. denied,* 506 U.S. 864, 113 S.Ct. 186, 121 L.Ed.2d 130 (1992) (quoting Restatement (Second) of Torts, § 339, Comment to subsection (c) (emphasis omitted)).

In *Carter,* a panel of this court likewise considered whether a possessor of land could be held liable to a child trespasser who was injured after accepting a dare. *Id.,* 390 Pa.Super. 265, 568 A.2d 646. United States Steel (USX) maintained and partially operated a plant. Over a six month period, Andrew Carter, a fourteen year-old, frequently trespassed with his friends. Although USX no longer manufactured steel at the plant, the generating plant remained in operation. Electricity passed through high voltage wires, which were suspended on

steel towers. One tower was accessible and could be ascended with a ladder. On one evening, Andrew's friend dared him to climb the ladder to reach the tower. During his climb, Andrew touched one of the high voltage wires and was shocked and severely injured. *Id.* at 270–71, 568 A.2d at 648–49.

The *Carter* court considered whether Andrew was aware that climbing the tower involved the risk of electrocution, and not merely the risk of falling. Andrew testified that he believed the electricity had been shut off because the plant appeared to be abandoned. He and his friend had climbed other structures without incident. The wires did not emit a "buzzing" sound, which would have indicated the presence of electric voltage. Further, neither boy saw signs warning of dangerous conditions on the tower. A panel of this court found that the foregoing evidence was sufficient to raise a question for the jury as to whether Andrew fully appreciated the risk of electrocution. *Id.* at 279, 568 A.2d at 646.

As in *Carter*, the appellant in this case, Cynthia Long, acted in response to a dare. Through his own testimony, Andrew Carter explained why he did not believe that the risk of electrocution was present. Despite her claims to the contrary, Cynthia conveyed through both deposition and trial testimony that she did appreciate the risks associated with diving into a shallow pool. As a result, Cynthia failed to present sufficient evidence to raise a question for the jury as to whether she, because of her youth, did not realize the risk involved in diving into the shallow pool. Because appellants were therefore unable to satisfy each of the prerequisites to a possessor of land's liability for injuries to a trespassing child, the trial court properly granted appellees' motion for compulsory nonsuit.

Order affirmed.

DEL SOLE, J., files a concurring and dissenting opinion.

DEL SOLE, Judge, concurring and dissenting:

While I agree with the Majority's conclusion that the question of whether Cynthia Long was either a trespasser or licensee should have been resolved by the jury, I would also

hold that the ultimate issue should have gone to the jury, as well. From my reading of the record there was sufficient evidence to allow this entire case to proceed to a jury. I conclude that such a result in appropriate in light of the standard of review for a grant of a compulsory non-suit. In such instances, we must view the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of all reasonable factual inferences and resolving any evidentiary conflicts in favor of the plaintiff. *Coatesville Contractors v. Borough of Ridley Park*, 509 Pa. 553, 506 A.2d 862 (1986). A compulsory nonsuit will be upheld only where it is inconceivable under the governing principles of law, after viewing the evidence in a light most favorable to plaintiff, that an issue can be resolved in plaintiff's favor. *Stevens v. Commonwealth, Department of Transportation*, 89 Pa.Cmwlth. 309, 492 A.2d 490 (1985).

In this case, although Cynthia admitted she had some swimming experience, she knew the depth of the pool and was advised not to dive into the pool, she also stated that she was advised against diving, not because it was dangerous in the four foot pool, but rather because Ms. Manzo was concerned about water loss from the pool. Cynthia testified she thought the "no diving" signs were posted because the home owner did not want water to be splashed out of the pool. The baby-sitter corroborated this testimony and stated, although Ms. Manzo allowed her children to jump or dive into the pool, she didn't like it. When asked why she "didn't like people jumping or diving into the pool" the babysitter responded: "Because you always had to fill the water back up." N.T. 3/31/95 at 7. In support of Appellants' position that Cynthia did not know the danger of diving, is Cynthia's testimony that she didn't consider a dive into four feet of water to be dangerous. She testified: "I guess because like when you dive in like real cushiony, real soft, like pillows, you know, catches you, so I guess I never thought it was dangerous." N.T. 3/30/95 at 90.

Given the testimony offered by Appellants I would conclude that the question of whether Cynthia appreciated the risks associated with diving into the four foot pool must be debated by a jury. While the jury may refuse to accept her testimony,

there is evidence in the record to suggest that Cynthia did not know the danger in diving. The critical matter to be determined is whether Cynthia knew of the risk involved at the time she dove into the pool. While, as the trial court noted, she may have understood she was not suppose to dive, she may not have associated diving with any danger, but rather with the home owner's desire to prevent water loss from the pool.

In *Mucowski v. Clark*, 404 Pa.Super. 197, 590 A.2d 348 (1991) the court considered a similar fact pattern in an action against a retail vendor. Therein a 21 year old senior engineering student dove head first into a four foot pool from a railing which was built three and one-half feet high around the pool. The student, who knew the depth of the pool before diving, struck his head on the bottom of the pool sustaining serious injury. The seller contended that the student voluntarily assumed the risk of his dive. We stated:

> In the instant case, there is an issue of fact concerning the plaintiff-appellant's knowledge and understanding of the risk of diving into four (4) feet of water from the railing around the pool. The evidence is clearly adequate to permit a finding that appellant, a senior engineering student who was familiar with the pool and the depth of the water therein, was cognizant of the risk and voluntarily chose to encounter it. On the other hand, appellant has himself denied an understanding of the risk which he encountered by diving head first into the pool's shallow water. A jury, to be sure, may find his testimony incredible, but it is nevertheless sufficient to prevent the court from finding as a matter of law that he subjectively understood the risk and voluntarily chose to encounter it. We conclude, therefore, that a summary judgment could not be entered summarily for appellee-vendor on grounds that the plaintiff-appellant had voluntarily assumed the risk of striking his head on the bottom when he dived into the pool.

*Id.* at 202, 590 A.2d at 348.

We then affirmed the grant of summary judgment for other reasons, concluding that the absence of warnings could not be

changed to the seller since it did not know and could not anticipate the changes made by the homeowner in adding the railing. Thus, the pool was not defective when sold because it did not warn of the risks of diving from a railing erected by the purchaser.

Although the *Mucowski* case differs because the court was considering recovery against a seller and the doctrine of assumption of the risk, its rationale is applicable here. Where there is testimony which, if believed by the jury, supports the position that a party did not understand the risks associated with a dive, or did not have reason to understand such risks, the matter must go to the jury.

In *Baran v. Pagnotti Enterprises, Inc.* 402 Pa.Super. 298, 586 A.2d 978 (1991), this court considered Section 342 of the Restatement in a wrongful death and survival action brought against a property owner after the plaintiff's son was killed when his vehicle fell into a 150–200 feet deep strip mining pit. We reversed the trial court's grant of a nonsuit and refused to accept its conclusion that the pit was an obvious danger. We ruled that the question of whether the condition was known or discoverable by the decedent, relieving the property owner of any duty to warn, was a factual question for the jury to resolve. The court wrote: "It is elementary to our system of jurisprudence that a jury should decide factual questions. We refuse to usurp this basic function of the jury." *Id.* at 307, 586 A.2d at 982.

I would conclude that the questions presented in this case are likewise appropriate for a jury to consider and decide. In my view it was an error for the trial court to take the matter out of its hands. Accordingly, I would reverse the grant of the nonsuit, and remand this matter for trial.