Whitehead, J.
Plaintiff, Joseph O’Sullivan, brings this action against defendants, Norman Shaw and Betiy Shaw, to recover for injuries sustained when he struck his head on the bottom of the Shaws’ residential swimming pool during a nighttime swim with their granddaughter. The Shaw’s deny liability and have moved for summary judgment. For the reasons set forth below, the Court allows the motion.
I. BACKGROUND
What follows are the undisputed material facts taken from the affidavits, answers to interrogatories and exhibits submitted by the parties. The Court summarizes the evidence in the light most favorable to O’Sullivan and draws in his favor all reasonable inferences.
On July 16, 1996, between 9:00 and 9:30 p.m., O’Sullivan, then twenty-one years old, incurred serious injuries to his neck and back when he dove, head-first, from the shallow end of the Shaws’ residential swimming pool and struck his head on the pool’s bottom. Fortunately, although sustaining a fractured cervical vertebra, O’Sullivan did not suffer permanent paralysis. His injuries resulted in a two-day hospital stay. At the time of the accident, O’Sullivan was attempting to dive over the shallow end of the pool and into the deep end. His stated purpose for diving over the shallow end was to avert a head or neck injuiy resulting from striking his head on the bottom of the pool.
The subject pool, installed in 1970, is of the in-ground variety. The pool measures 18 feet wide by 36 feet long, and consists of a shallow end and a deep end. At its most shallow point, the pool is 4 feet deep; at its deepest point, the pool is 8 feet deep. The transition from shallow to deep is not precipitous; rather, the shallow portion, after a level expanse, slopes gradually down until the bottom again levels off at what is referred to as the deep end. Of the pool’s 36 foot length, the bottom, measured from the beginning of the shallow area to the point at which the bottom begins its gradual decline, is approximately 10 feet. At the deep end, the sides of the pool are tapered. In pool parlance, the sloping bottom and tapered sides identify the pool as being “hopper-style.” The pool has a vinyl liner. A diving board is affixed to the side of the deep end of the pool. The diving board is approximately five feet in length. Two ladders, one in the shallow end and one in the deep end, lie in opposite corners. The pool is surrounded by white trim. The pool did not have depth markers, i.e., indicators separating the shallow end from the deep end. There was no underwater lighting, such that the bottom of the pool was not visible at night.
On the night in question, the Shaws were out of town on vacation. O’Sullivan, then the boyfriend of the Shaws’ twenty-two year old granddaughter, Stacy Newton (“Newton”), accompanied her to the Shaws’ residence. Newton was on the property with permission. O’Sullivan was her guest.
The injury to O’Sullivan occurred when O’Sullivan attempted a racing dive into the pool from the side opposite the diving board, the shallow end. In times past, Shaw had witnessed various swimmers at the Shaws’ pool do the same racing dive from the same location, jumping out over the shallow end and falling at a trajectory consummate with the sloped portion of the pool’s bottom, and eventually surfacing in the deep end. During the dive giving rise to this action, O’Sullivan entered the water at too steep an angle and struck his head on the bottom. He surfaced in the deep end of the pool. He could move his arms but was paralyzed from the waist down. With some struggle, *125 O’Sullivan made it to the edge of the pool. He was eventually rescued by neighbors of the Shaws.
O’Sullivan had swum in the Shaws’ pool on at least one, perhaps as many as two occasions during daylighthours prior to July 16, 1996. On those occasions, he had made at least one dive from the shallow end similar to the subject dive. He also had made dives from the diving board. O’Sullivan knew that if he were to strike his head on the bottom of the pool during a dive, serious injuries could result. Though he did not know the exact dimensions of the pool, he was aware of approximately where the shallow portion of the pool ended. Further, he was aware of the approximate depth of the shallow end. He had previously observed other guests of the Shaws standing in the shallow end of the pool, guests whom subsequently he had stood next to and had spoken with outside of the pool.
During his childhood, O’Sullivan had had occasion to visit a public pool in Lawrence. That pool consisted of a shallow end and a deep end. He had participated in swimming activities during gym class at his high school’s Olympic size pool. He had tried out for the high school swim team in 1991.
II. DISCUSSION
This court grants summary judgment when there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). Summary judgment is warranted when all material facts have been established and the moving party is entitled to judgment as a matter of law. See Augat, Inc. v. Liberty Mutual Ins. Co., 410 Mass. 117, 120 (1991). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “[A] party moving for summary judgment in a case in which the opposing party . . . [has] the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
In the present case, the Court concludes that no genuine issue of fact exists and that the Shaws are entitled to judgment as a matter of law. The Court begins with a review of the general tort law principles pertinent to this case. Negligence is the failure to exercise that degree of care which a reasonable person would exercise under the circumstances. Morgan v. Lalumiere, 22 Mass.App.Ct. 262 (1986), review denied, 398 Mass. 1103 (1986). Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in injury. Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995). The duty owed by a landowner to someone lawfully on the owner’s premises is one of reasonable care under the circumstances. Sullivan v. Town of Brookline, 416 Mass. 825, 827 (1994). The common law duty of reasonable care owed to all lawful visitors by a landowner includes an obligation to maintain the premises in a reasonably safe condition and to warn visitors of any unreasonable dangers of which the owner is aware or reasonably should be aware. Davis, 420 Mass. at 743. There is no duty to warn of dangers obvious to persons of average intelligence. Lyon v. Morphew, 424 Mass. 828, 833 (1997); Toubiana v. Priestly, 402 Mass. 84, 89 (1988); Thorson v. Mandell, 402 Mass. 744, 749 (1988). See also, Young v. Atlantic Richfield Co., 400 Mass. 837, 842 (1987), cert. denied, 484 U.S. 1066 (1988) (no duty imposed on gasoline company to warn customers pumping their own gas of danger of being struck by an automobile); Sweet v. Cieslak, 23 Mass.App.Ct. 908, 908-09 (1986) (owner of car wash was under no duty to warn customer of open and obvious danger of attempting to wash car in near zero temperatures where customer observed wet, icy conditions inside self-service bay before losing his footing); Polak v. Whitney, 21 Mass.App.Ct. 349, 353 (1985) (no duty to warn that an automobile could collide with another automobile parked on the street near the defendant’s house). Whether a defendant owes a duty of care to a plaintiff is a question of law to be decided by the court. Davis, 420 Mass. at 743; Yakubowicz v. Paramount Pictures, 404 Mass. 624, 629 (1989).
Here, the Court concludes that the risk of injury associated with O’Sullivan’s dive into the Shaw’s pool was open, obvious and known to him from his experience swimming in that pool and in other pools. Hence, the Shaws possessed no duty to warn him of the risk. Moreover, there being no such duty, there was no breach of duty by the Shaws and, thus, no liability for the injuries which O’Sullivan sustained.
The Court is aware of no Massachusetts precedent directly on point. In Gambardello v. Seiler, 335 Mass. 49, 52 (1956), the Supreme Judicial Court upheld a directed verdict against a plaintiff who dived hastily into a semi-public pool and was injured when he struck other swimmers. The other swimmers were plainly visible to him, but he did not look before diving. However, the facts of Gambardello are slightly different that those presented here. More importantly, the Court’s decision turned upon an application of principles of contributoiy negligence, principles which are no longer followed in this Commonwealth.
There are Courts in other jurisdictions which have squarely addressed the issue presented here. The prevailing view is that a pool owner is not responsible as a matter of law to a plaintiff injured as a result of diving into a pool, when the plaintiff was familiar with *126 the pool and appreciated the dangers of diving into the shallow end. See, e.g., Mallard v. Hoffinger Indus., Inc., 222 Mich. App. 137, 137 (1997) (defendant pool manufacturer entitled to summary judgment in case brought by plaintiff rendered quadriplegic after striking head on bottom of pool because risk was open and obvious); Long v. Manzo, 682 A.2d 370, 373 (Pa. 1996) (in case brought against a pool owner, judgment as matter of law imposed against plaintiff who sustained injuries after striking head on the bottom of a pool proper when court found that the plaintiff understood risk of diving into the shallow end of a pool); Boltax v. Joy Day Camp, 490 N.E.2d 660, 661 (N.Y. 1986) (in case where the defendant negligently filled pool below capacity, and the plaintiff received injuries after diving into shallow end, summary judgment for the defendant was warranted because the plaintiff acted recklessly and with knowledge of risk, thereby breaking the chain of causation); Smith v. Stark, 490 N.Y.S.2d 811, 813 (N.Y. App. Div. 1985) (trial court’s denial of the defendant pool manufacturer’s motion for summary judgment reversed when appeals court held that absence of signs warning of dangers of diving into shallow water were not a substantial factor in causing injuries sustained by the plaintiff who struck his head on the bottom of the pool), aff'd, 490 N.E.2d 841, 842 (N.Y. 1986); Scifres v. Kraft, 916 S.W.2d 779, 782 (Ky. Ct. App. 1996) (homeowners granted summary judgment where the plaintiff was injured after striking his head on pool bottom because risk was open and obvious); Osborne v. Claydon, 640 N.E.2d 684, 689 (Ill. App. Ct. 1994) (award of summary judgment in favor of defendant pool owner proper when the defendant had no reason to think that plaintiff, who was injured after hitting head on bottom of pool, would not appreciate obvious dangers associated with diving into the shallow end of the pool); Meyers v. Donnatacci, 531 A.2d 398, 401 (N.J. Super. 1987), quoting Hill v. Yaskin, 380 A.2d 1107 (N.J. 1977) (in case where the plaintiff was injured after striking head on the bottom of a pool, summary judgment in favor of the defendant was warranted because the defendant had no duty to warn the plaintiff since “the risk ... to be guarded against [was] ‘reasonably within the range of apprehension of injury to [the plaintiff]’ ”); McCormick v. Custom Pools, Inc., 376 N.W.2d 471, 477 (Minn.Ct.App. 1985) (even assuming pool was defective, summary judgment properly entered for the defendants when the plaintiffs ignorance of his own awareness of the risk of danger of diving into shallow end of pool was the proximate cause of injuries sustained as result of striking head on pool bottom); Sims v. Willoughby, 345 S.E.2d 626, 629 (Ga. Ct. App. 1986) (award of summary judgment in favor of defendant pool owner affirmed because injuries sustained by plaintiff after diving into pool and striking head on bottom resulted from the plaintiffs lack of concern for his own safety); Murphy v. D’Youville Condominium Assoc., Inc., 333 S.E.2d 1, 3 (Ga. Ct. App. 1985) (defendant pool owner entitled to summary judgment because plaintiff was aware of risks and familiar with pool in which he was injured).
In this case, O’Sullivan demonstrated through his sworn statements, as well as his conduct, that he understood or had reason to understand the risks involved in diving head-first into a shallow swimming pool. The twenty-one-year-old O’Sullivan had considerable swimming experience. In deposition testimony, O’Sullivan acknowledged that he had frequented a public pool as a child. Further, he described the public pool as having both shallow and deep ends. As a high school student, he swam in his school’s Olympic size pool and tried out for the high school swim team. Additional deposition testimony revealed that O’Sullivan swam in the Shaws’ pool on at least one, perhaps as many as two, prior occasions during daylight hours. Though he was unaware of the exact depth of the shallow end of the pool, or where the bottom began its gradual decline into the deeper end, he knew the approximate depth of the water and the approximate beginning of the bottom’s descent from his own experience in the pool and from observing other guests of the Shaws first in the pool, and later outside of the pool. During his visits to the pool, he dove from the shallow end of the pool as well as the diving board. O’Sullivan, moreover, conceded that he knew that diving into the shallow end of any pool could result in serious injury. His stated purpose in attempting a racing dive on July 16, 1996 was to jump over the shallow end and avoid the possibility of striking his head on the bottom of the pool and incurring an injury.
In sum, O’Sullivan’s injuries were the result of his own error in judgment. Because O’Sullivan knew or had reason to know of the risks of diving into the shallow portion of the Shaws’ pool, the Shaws cannot be held liable for the physical harm caused to him as a lawful visitor. O’Sullivan’s sworn statements evidencing his awareness of the dangers inherent in diving into the shallow end of the subject pool, his general knowledge of pools derived from experiences past, his daylight observations of the subject pool prior to the accident, and plain common sense, together lead this Court to conclude that, as a matter of law, the Shaws are not responsible for O’Sullivan’s injuries. Because the failure to find a duty of care as a matter of law forecloses analysis of the other elements of negligence, summary judgment must be granted in favor of the Shaws.
In his attempt to avoid summary judgment, O’Sullivan relies almost exclusively on Charity v. Yates, 354 Mass. 275 (1968), arguing that the holding there governs the disposition of this case. Despite some similarities, that case is distinguishable on its facts. In Charity, the plaintiff sought to recover for injuries incurred when he struck a hidden rock after diving into a lake from a wharf on premises let by the defendant. The defendant pleaded the affirmative de *127 fense of contributory negligence. Charity, 354 Mass. at 276-77. There was evidence that the plaintiff, like O’Sullivan here, had observed others diving from the same spot before he himself did so. Further, there was evidence, similar to evidence in the case at bar, that the defendant knew of the danger but did not warn the plaintiff. Reversing the trial court’s award of a directed verdict in favor of the defendant, the Supreme Judicial Court held that the foregoing facts were enough to send the issue of contributory negligence to the jury.
Dispositively, however, the plaintiff in Charity was completely unaware that a rock lay hidden under the water in which he was diving, a fact which the defendant knew but failed to disclose. Here, O’Sullivan knew and appreciated the dangers of diving into the shallow end of the Shaws’ pool, knew he was diving from the shallow end when the accident occurred, had experience swimming in the subject pool, and purposely attempted a racing dive to avoid striking his head on the bottom of the pool, in order to avoid a potentially serious injuiy. Therefore, given the factual dissimilarities between Charity and the case at bar, the holding in Charity does not control here.
ORDER
For the foregoing reasons, the defendants’ Motion for Summary Judgment is ALLOWED.