**Mary C. and Robert CRESSWELL, h/w, Appellants,**

v.

**Edward G. END, Appellee.**

Superior Court of Pennsylvania.

Argued March 12, 2003.

Filed Aug. 22, 2003.

Dennis R. Meakim, Glenside, for appellants.

Kenneth Sykes, Norristown, for appellee.

BEFORE: DEL SOLE, P.J., GRACI, and BECK, JJ.

OPINION BY GRACI, J.:

¶ 1 Appellants, Mary C. and Robert Cresswell (the "Cresswells"), appeal from an order entered August 14, 2002, in the Court of Common Pleas of Montgomery County, granting summary judgment in favor of Appellee, Edward G. End ("End"). We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 The trial court has provided us with a concise summary of the relevant facts:

On July 2, 1997 [Mrs. Cresswell] sustained injuries while in the performance of her duties as water meter reader for the Pennsylvania–American Water Company ("Pennsylvania–American"). On that date, [Mrs. Cresswell] was on Mr. End's premises located in Norristown, Pennsylvania to read the water meter. After reading the meter, [Mrs. Cresswell] fell into a window well. [Mrs. Cresswell] alleges that the window well was obscured by shrubbery and landscaping surrounding the window well. [Mrs. Cresswell] attributes her fall to Mr. End's failure to maintain the shrubbery and landscaping surrounding the window well.

At the time of [Mrs. Cresswell]'s accident the water meter was located on the outside of Mr. End's home, above the window well. (Defendant's Motion for Summary Judgment, Exhibit "E"). The meter had been in this location since September 12, 1989, when it was moved from the inside of Mr. End's home to the outside of his home by [Pennsylvania–American]. (Forest Brandon, III 12/17/99 p. 14). Mr. End did not have any input as to the relocation of the water meter. (Edward End 12/17/99 [p. 11]).

Additionally, deposition testimony revealed that [Mrs. Cresswell] had been to Mr. End's premises to read the water meter on numerous occasions prior to her accident in 1997 without any incident. (Mary Cresswell 12/17/99 p. 17–18). Forest Brandon, [Mrs. Cresswell]'s supervisor at the time of the accident, testified that it is the usual business practice of [Pennsylvania–American] to notify a homeowner when shrubbery or landscaping makes reading the water meter difficult. (Forest Brandon 12/17/99 p. 23–25). [Mr. End] was never notified by the company or any of its employees that any landscaping or shrubbery made reading his meter difficult or dangerous over the eight year period after the meter was moved to the location above the window well. *Id.* at 25.

Opinion, 10/15/02, at 1–2.

¶ 3 On August 12, 1999, the Cresswells filed a civil complaint against End seeking damages for Mrs. Cresswell's injuries. End moved for summary judgment and the parties proceeded to a hearing on August 6, 2002. The trial court granted End's motion and the Cresswells now appeal that decision.

¶ 4 The Cresswells' issues on appeal may be summarized as follows:

1. Whether the trial court erred in determining that Mrs. Cresswell was a licensee rather than an invitee upon End's property?

2. Whether the trial court erred in finding that End did not breach a duty of care owed toward Mrs. Cresswell?

*See* Brief of Appellants, at i.[1]

## II. SCOPE AND STANDARD OF REVIEW

Our review of the trial court's grant of summary judgment is plenary. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions and affidavits and other materials show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. [*S* ]*ee* Pa.R.C.P. 1035.1–1035.5. We must view the record in the light most favorable to the opposing party and resolve all doubts as to the existence of a genuine issue of material fact in favor of the nonmoving party. We will reverse the trial court's grant of summary judgment only upon an abuse of discretion or error of law.

*Murphy v. Duquesne University of the Holy Ghost,* 745 A.2d 1228, 1232–33

(Pa.Super.1999), *aff'd,* 565 Pa. 571, 777 A.2d 418 (2001) (citations omitted).

## III. DISCUSSION

■■■ ¶ 5 The Cresswells first challenge the trial court's determination regarding Mrs. Cresswell's legal status while she was an entrant upon End's property. It is well-settled that "[t]he duty of a possessor of land toward a third party entering the land depends upon whether the entrant is a trespasser, licensee, or invitee." [2] *Updyke v. BP Oil Co.,* 717 A.2d 546, 549 (Pa.Super.1998) (citation omitted). Generally, the determination of an entrant's legal classification is one of fact for the jury. *Palange v. City of Philadelphia, Law Dept.,* 433 Pa.Super. 373, 640 A.2d 1305, 1307 (1994), *appeal denied, Palange v. Priori's Bar & Restaurant,* 542 Pa. 649, 666 A.2d 1057 (1995). "Where the evidence is insufficient to support an issue, however, it may be appropriate for the court to remove that issue from the jury." *Id.* (citation omitted).

¶ 6 [A]n "invitee" is defined in the following manner:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose

---

1. Among the numerous deficiencies in the Cresswells' appellate brief is the omission of a "Statement of Questions Involved." The Pennsylvania Rules of Appellate Procedure not only require the inclusion of such a Statement, but state unequivocally that "[t]his rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby." Pa.R.A.P. 2116(a). The Cresswells have also neglected to include a statement of jurisdiction, statement of the scope and standard of review, and a recitation of the language of the order in question. Pa.R.A.P. 2111(a)(1)-(3), 2114, 2115. Finally,

the Cresswells have failed to designate the order appealed from on the cover of their appellate brief. Pa.R.A.P. 2172(a)(5). Because we can discern the gravamen of the Cresswells' rather straightforward arguments from other portions of their brief, and in the interest of bringing closure to this four-year old case, we shall overlook their briefing errors.

2. Neither party suggests that Mrs. Cresswell was a trespasser, therefore we shall only consider whether she was a licensee or an invitee.

for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Restatement (Second) of Torts § 332 (1965), *cited with approval in Palange,* 640 A.2d at 1308. The Restatement defines a "licensee" as "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." Restatement (Second) of Torts § 330 (1965), *cited with approval in Palange,* 640 A.2d at 1308.

¶ 7 The distinction between invitation and permission forms the basis for distinguishing an invitee from a licensee.

Although invitation does not in itself establish the status of an invitee, it is essential to it. An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor *desires* them to enter the land; permission is conduct justifying others in believing that the possessor is *willing* that they shall enter if *they so desire.*

Restatement (Second) of Torts § 332 cmt. b (1965), *cited with approval in Palange,* 640 A.2d at 1308.

¶ 8 The Cresswells argue that, based upon Restatement (Second) of Torts § 345, Mrs. Cresswell was an invitee. Section 345 states generally that "the liability of a possessor of land to one who enters the land only in the exercise of a privilege, for either a public or a private purpose, and irrespective of the possessor's consent, is the same as the liability to a licensee." Restatement (Second) Torts § 345(1) (1965). However, under section 345(2), public officers and employees who enter land in the performance of a public duty enjoy the status of invitees. Comment C to section 345, upon which the Cresswells

rely specifically, provides further explanation:

The rule stated in Subsection (1) applies where there is entry only under a privilege to enter, without any additional factors which may increase the obligation of the possessor to the visitor. Those who enter land in the exercise of a privilege conferred by authority of law, irrespective of the possessor's consent, may have the status of invitees, as stated in § 332, if they come for a purpose directly or indirectly connected with the business of the possessor. In that event they are entitled to the greater protection afforded to invitees, under the rules stated in §§ 341A and 343. Thus a building, sanitary, or safety inspector who enters business premises to perform his public duty is an invitee, since his presence is closely connected with the business conducted there, and may even be indispensable to it. *The same is true of public employees who enter a private residence for the purpose of some business with the possessor,* as in the case of a garbage collector, *or the reader of a city water meter.*

*Id.,* Comment C (emphasis added).

¶ 9 As the trial court noted, our Supreme Court expressly declined to adopt section 345 in *Rossino v. Kovacs,* 553 Pa. 168, 718 A.2d 755 (1998), and we are not at liberty to diverge from that ruling. *Foflygen v. R. Zemel, M.D. (PC),* 420 Pa.Super.18, 615 A.2d 1345, 1353 (1992), *appeal denied,* 535 Pa. 619, 629 A.2d 1380 (1993) ("As an intermediate appellate court, this Court is obligated to follow the precedent set down by our Supreme Court."). Nor do we find the language in comment C to be persuasive here. Mrs. Cresswell was not a "public employee" but, rather, was employed by a private concern. She did not enter End's "private residence" at any time during her visit to his premises. For

these reasons, we decline to follow the Cresswell's reliance upon section 345.

¶ 10 Applying the law of this Commonwealth to the instant case, we find that Mrs. Cresswell was a licensee upon End's land. End's conduct, as a customer of Pennsylvania–American, was to give permission to the company and its employees to enter his premises for the purpose of reading the water meter. End did not specifically invite Mrs. Cresswell to enter his property, nor did his tacit permission rise to the level of an invitation. Therefore, as one who was privileged to enter End's land only by virtue of End's permission, Mrs. Cresswell was a licensee as that term is defined in the Restatement and relevant caselaw. Moreover, since the evidence was insufficient to support a finding that Mrs. Cresswell was an invitee, the trial court properly determined her status as a matter of law.

■ ¶ 11 The Cresswells next argue that the trial court erred in determining, as a matter of law, that End did not breach any duty of care owed to Mrs. Cresswell, whom we have already determined was a licensee upon End's property. The duty owed a licensee in Pennsylvania was established by our Supreme Court in *Sharp v. Luksa*, 440 Pa. 125, 269 A.2d 659 (1970), when it adopted the language of section 342 of the Restatement (Second) of Torts. Section 342 provides as follows:

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

Restatement (Second) of Torts § 342 (1965). The conjunctive wording of section 342 indicates that a possessor of land is subject to liability only if all three criteria are present. *Himes v. New Enterprise Stone & Lime Co., Inc.*, 399 Pa.Super. 301, 582 A.2d 353, 356 (1990). This determination may be made by the court where reasonable minds could not differ as to the conclusion. *Id.* at 358.

¶ 12 The trial court found, as a matter of law, that End did not know, nor did he have reason to know, that the window well presented an unreasonable risk of harm to a water meter reader. Opinion, 10/15/02, at 9. The uncontradicted evidence of record supports the trial court's conclusion. At his deposition, Forest Brandon, Mrs. Cresswell's supervisor, testified that End's water meter had been installed above the window well by Pennsylvania–American in September, 1999, where it remained until shortly after Mrs. Cresswell's accident. N.T. Forest Brandon, 9/12/00, at 14:16–19. Brandon further testified that none of Pennsylvania–American's meter readers had ever complained about conditions on End's property or reported incidents of any kind. *Id.* at 24–25, 33:6–12. To the best of Brandon's knowledge, End had never been notified by Pennsylvania–American or any of its employees that a hazardous condition existed on his property. *Id.* at 13:6–9, 24–25. According to Brandon, it is the customary business practice of Pennsylvania–American to relay such information to its customers. *Id.*

■ ¶ 13 End's deposition testimony corroborated that offered by Brandon. End stated that he did not participate in the location of the water meter either before or after Mrs. Cresswell's fall. N.T.

Edward G. End, 12/17/99, at 11:6–9. More importantly, End verified that he had never experienced any problems related to the window well or been notified of any problems by any third party. *Id.* at 18:17–24. Additionally, End stated that he has pruned and maintained the shrubbery around the window well every fall since 1963, and that he did nothing differently at any time relevant to this case. *Id.* at 24. Based upon the foregoing evidence, we find ample support for the trial court's conclusion that End neither knew nor had reason to know of any condition on his property involving an unreasonable risk of harm to licensees such as Mrs. Cresswell.[3]

## IV.  CONCLUSION

¶ 14 We have, in accordance with our standard of review, viewed the record in this matter in the light most favorable to the Cresswells, who stood as the party opposing summary judgment below. Even under that deferential standard, it is clear to us that End was entitled to judgment as a matter of law. The trial court properly determined, as a matter of law, that (1)

---

**3.** Our findings with respect to section 342(a) are sufficient to relieve End of liability. We note, however, that for purposes of section 342(c), it appears Mrs. Cresswell knew of the condition and the risk involved. Evidence revealed that Mrs. Cresswell had entered End's property to read the meter on several occasions prior to the day of the accident. End also testified unequivocally that he maintained the shrubbery surrounding the window well in the same manner every year, including 1997.

Similarly, even if Mrs. Cresswell had been determined to be an invitee on End's premises, End would still not be liable for her injuries. "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343(A), *cited with approval in Carrender v. Fitterer,* 503 Pa.

---

Mrs. Cresswell was a licensee rather than an invitee while she was on End's premises for the purposes of reading his water meter, and (2) that End did not breach the duty of care he owed toward licensees such as Mrs. Cresswell. Finding no abuse of discretion or error of law by the trial court, we affirm the court's order granting summary judgment in favor of End.

¶ 15 Order affirmed.

---

178, 469 A.2d 120, 123 (1983). *See also Hughes v. Seven Springs Farm, Inc.,* 563 Pa. 501, 762 A.2d 339 (2000) (a possessor of land owes an invitee no duty to protect against obvious and avoidable dangers). Here, evidence established that the meter was located above the window well. As we indicated above, Mrs. Cresswell had been on this property to read this particular meter on several occasions prior to the day of the accident. End was never notified that any landscaping or shrubbery made reading his meter difficult or dangerous since the meter was moved to its location above the window well. End testified that he maintained the shrubbery surrounding the well this particular year in the same manner he had in previous years. Thus, it appears that the window well presented an obvious and avoidable danger. End was not required to protect Mrs. Cresswell from this obvious danger. Thus, there would be no liability on behalf of End even if Mrs. Cresswell were deemed an invitee.